STATE of Wisconsin, Plaintiff-Respondent,

v.

Artemio A. REYNOSA, Defendant-Appellant.†

Court of Appeals

*No. 81–1675–CR. Submitted on briefs May 12, 1982.—*
*Decided June 15, 1982.*
(Also reported in 322 N.W.2d 504.)

† Petition to review denied.

500

For the defendant-appellant the cause was submitted on the brief of *Mark Lukoff,* first assistant state public defender.

For the plaintiff-respondent the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *Michael R. Klos,* assistant attorney general.

Before Decker, C.J., Moser, P.J., and Randa, J.

DECKER, C.J. The sole issue on this appeal is whether the jury instruction concerning defendant's intoxication may have impermissibly shifted the burden of persuasion to the defendant, or is otherwise erroneous as a matter of law. We find no error and affirm.

Defendant was charged with first-degree murder and convicted after a jury trial. His sole defense was that he was intoxicated at the time of the killing and lacked intent to kill. The jury was instructed regarding first-degree murder, intoxication, and second-degree murder. The intoxication instruction was not the pattern jury instruction, Wis J I—Criminal 765, but one negotiated during instruction conference:

Before reading the instruction which defines the elements of second degree murder, I will now read to you the instruction which defines and explains for you the defense of intoxication as that defense applies only to the charge of first degree murder.

The intoxication of a defendant may be a defense to the charge of first degree murder. In order for a defendant to avail himself of the defense of intoxication, there must be evidence that he was intoxicated to the degree that I will define at the time of the commission of the crime so that the state of intoxication of the defendant negated the existence of the state of mind essential to the crime.

The intoxicated condition to which the statute refers is not the condition of alcohol-induced incandescence or being well-lit that lowers the threshold of inhibitions or stirs the impulse for criminal adventures. It is that degree of complete drunkenness which makes a person

incapable of forming intent to perform an act or commit a crime. To be relieved from responsibility for criminal acts, it is not enough that a defendant was under the influence of intoxicating beverages. The evidence must establish that degree of intoxication that means he was utterly incapable of forming the intent requisite to the commission of the crime charged.

If you find that the defendant was so intoxicated at the time of the commission of the crime that he was utterly incapable of forming a state of mind essential to the commission of a crime—in this case, the intent to kill as to the crime charged of first degree murder—then you must find the defendant not guilty of the commission of that crime.

If you are not so satisfied, then the defendant may not avail himself of the defense of intoxication. If you have any reasonable doubt as to whether or not the defendant was so intoxicated, you must give the defendant the benefit of that doubt and find him not guilty of first degree murder.

You are instructed that intoxication, as defined herein, is not a defense to the charge of second degree murder.

Defendant raises several challenges to this jury instruction, and requests a new trial.

Sec. 939.42(2), Stats., provides that an intoxicated condition is a defense if such a condition "[n]egatives the existence of a state of mind essential to the crime." The "intent to kill" is an element of the crime of first-degree murder. When the defendant introduces evidence to demonstrate that, because of his intoxicated state, he did not intend to kill his victim, the accused seeks to negate a fact which the state must prove in order to convict the defendant of murder. This is the type of negative defense which was contemplated by the decision in *Mullaney* and *Patterson*. When such a defense is asserted, the burden of persuasion cannot be placed upon the defendant without violating his right to due process of law. *State v. Schulz,* 102 Wis. 2d 423, 429–30, 307 N.W.2d 151, 156 (1981).

In *Schulz* our supreme court found that the jury instructions impermissibly shifted the state's burden of

persuasion to Schulz by stating that he was to establish that he was under the influence of intoxicating beverages and that he must establish that "degree of intoxication that means he was utterly incapable of forming the intent" to kill. Reynosa's reliance upon *Schulz* is misplaced.

An analysis of the operation of sec. 939.42, Stats., is pertinent. Statutorily categorized as a defense to criminal liability, sec. 939.42 (as applied to this case) discloses several legislative determinations:

(1) Intoxication is relevant to state of mind. Therefore, evidence of intoxication is admissible in evidence pursuant to sec. 904.01;

(2) Evidence of intoxication may negative existence of the intent to kill. Thus, from evidence of intoxication the jury may infer the absence of intent to kill and conclude that the state has not discharged its burden to prove this necessary element of first-degree murder;

(3) Evidence of intoxication sufficient to negative the intent to kill constitutes a defense;

(4) An intoxication defense if established by the evidence relieves the accused of criminal liability and bars conviction for the charged crime.

The courts in administration of sec. 939.42, Stats., apply legal procedural rules:

(1) The burden of persuading the jury of the accused's intent to kill, an element of the crime of first-degree murder, is upon the state and requires a quantum of evidence described as beyond a reasonable doubt;

(2) The state's burden of persuasion with respect to proving intent to kill may not be shifted to the accused;

(3) The burden of producing evidence of intoxication rests upon the accused if he wishes to invoke the "intoxication/no intent to kill" inference and urge the jury to draw an "intoxication/no intent to kill" conclusion;

(4) The sufficiency of the evidence to trigger consideration of intoxication as a defense to proof of intent

to kill is a preliminary question of law to be decided by the trial judge;[1]

(5) If the trial judge determines that the evidence is sufficient to carry the intoxication defense to the jury, it must be instructed on the question.

The interaction of these legislative determinations and court-applied legal rules brings us to the situs of the problem in this case. What shall be the instruction to the jury?

The effect of sec. 939.42, Stats., applied to this case, is that from intoxication a trier of fact is permitted to conclude an absence of intent to kill which bars conviction of the accused. Intoxication as a toxicological condition ranges from "glow" to "unconsciousness." The statute merely acknowledges that the state of intoxication may negative the existence of intent to kill. The degree of intoxication which permits an inference of no intent to kill is not statutorily defined. The statute provides neither a minimum nor maximum chemical test measure as a basis for applying the permissive inference. Given the nature of criminal circumstances, such tests would often be unobtainable. Even if such measurements were available, the effect of alcoholic influence on individuals is not uniform.

Concerning the effects of alcohol on the body, it is most important to understand that it is not the amount of alcohol consumed that governs the degree of impairment but rather the amount of alcohol that is absorbed into the blood and carried to the central nervous system. Contrary to popular notions, alcohol acts not as a stimulant but as a depressant to the responses of the central nervous system which is composed of the brain, spinal

---

[1] The state may respond by (1) attacking the credibility of witnesses through whom the intoxication is offered, (2) introducing evidence to refute the basic fact of intoxication, (3) introducing evidence to refute the inferred fact of an absence of intent to kill, or (4) introducing evidence of the accused's intent to kill.

cord and spinal nerves. The alcohol-rich blood courses over the brain through the vascular system, imparting a depressing effect to the brain tissue until the alcohol disappears from the blood. Its primary blunting effect, in low concentrations, occurs in the cerebral areas of the brain which control the higher functions. There are consequent reductions of judgment, response to stimuli and self-restraint. At higher concentrations, blood alcohol causes a noticeable loss of muscular control with a lengthening of reaction time, confusion, and disturbance of sensory perception such as hearing and vision, decreased pain sensitivity, staggering gait and slurred speech. These deteriorations in functions occur as a result of the weakened effectiveness of nerve impulse transmissions. At even higher concentration, stupor approaching paralysis results. Finally, at maximal sub-lethal concentration the individual lapses into unconsciousness, with attendant depression of reflexes and impairment of circulation.

Manifestations of alcoholic influence are not uniform between individuals. There are people who can consume comparatively large amounts of alcohol without seeming to be seriously impaired. [Footnote omitted.] This results from (1) less alcohol going into the bloodstream because of different consumption tolerances of absorption, distribution and elimination, and (2) the constitutional tolerance involving a variable susceptibility to alcohol in the nerve cell. At certain blood alcohol levels, however, everyone is impaired to a significant degree. A. Moenssens, R. Moses & F. Inbau, *Scientific Evidence in Criminal Cases* 237 (1973).

Absent a statutory measure of alcoholic influence which negates the intent to kill, the jury must be informed of the relevance of intoxication evidence to the question of intent to kill and it must be informed that it is permitted to conclude from such evidence that the accused did not have intent to kill. Further elaboration seems merely a matter of according to the trial judge the latitude to state in understandable terms

(1) the relevance of the intoxication evidence;

(2) the permissibility of a jury conclusion from intoxication evidence that the accused had no intent to kill; and

(3) that such a conclusion prevents conviction of the accused for first-degree murder. In doing that the instruction must not shift to the accused the state's burden to prove the accused's intent to kill.

The error in the *Schulz* case instruction occurred because the jury was informed that the burden was on Schulz to prove that he was intoxicated to such a degree that he was utterly incapable of forming the intent to kill. The jury instruction in the *Reynosa* case does not contain the error found fatal in the *Schulz* case.

Paragraph two of the *Reynosa* instruction states that "there must be evidence" that the defendant was intoxicated. Paragraph three states that "[t]he evidence must establish" intoxication. The statements are accurate. The first statement is unnecessary and surplusage because if there was no credible evidence of intoxication the jury should not be instructed with respect to the intoxication defense. The second statement is appropriate because without proof of intoxication such intoxication cannot negate intent to kill. The statement correctly informs the jury that *the evidence,* not the defendant, must establish intoxication. These paragraphs could not lead a reasonable juror to conclude that Reynosa had to convince him or her that a reasonable doubt existed regarding his intent to kill, especially when the instruction also required that Reynosa be given the benefit of any reasonable doubt.

Reynosa contends that because the instruction required that "[t]he evidence must establish that degree of intoxication that means he was *utterly incapable* of forming the intent requisite to the commission of the crime

charged [emphasis added]," it required him to exclude the possibility of intent to kill. Reynosa claims that his contention is supported by *Smith v. Smith*, 454 F.2d 572 (5th Cir. 1971), *cert. denied*, 409 U.S. 885 (1972) (alibi defense). We disagree. The *Smith* jury instruction expressly stated that the "defense must be established to the reasonable satisfaction of the jury and must be such as reasonably to exclude the possibility of the presence of the defendant at the scene of the offense at the time of its commission." Although the court focused on that language in its determination that the entire instruction impermissibly shifted the burden to the defendant, it also noted that the challenged instruction specifically stated "the onus is on the accused to verify his alleged alibi, not beyond reasonable doubt, but to the reasonable satisfaction of the jury." In light of the latter part of the instruction there is no doubt of the impermissible shift of the burden. That circumstance is not present in this case.

We do not agree that this language is subject to the risk of interpretation as burden shifting. It correctly describes to the jury the quantum of evidence necessary for it to conclude that because of intoxication the defendant was unable to form the intent to kill. It does not address the burden of persuasion or shift it to the defendant.

Reynosa's reliance upon *United States v. Scott*, 529 F.2d 338 (D.C. Cir. 1975), is also misplaced. In interpreting the intoxication instruction in *Scott*, the court highlighted the instruction provision that "drunkenness may be shown to prove mental incapability to form the specific intent." The court concluded that the instructions "might well have been understood as shifting the burden of proof to the defendant." However, a careful reading of the court's opinion establishes that such an impermissible shift of the burden of proof occurred because the

trial court omitted an instruction apprising the jury of its duty to acquit the defendant if the evidence of intoxication was such that it left the jury with a reasonable doubt as to whether the defendant was capable of forming the required intent. *Id.* at 340. Such a provision was not omitted from the *Reynosa* instruction.

Reynosa claims that repeated reference in this instruction to intoxication as a "defense" conveyed an impression to a reasonable juror that the burden of persuasion with reference to that "defense" had been impermissibly shifted to Reynosa. His untenable argument is made in his brief as follows:

At several points in the instruction, the court referred to intoxication as a "defense." While this characterization may be technically accurate, since it appears in the statute and since the defendant does bear the burden of production on the issue, the word "defense" nonetheless conveys the impression that the defendant must prove something in order to avoid conviction. This notion is, of course, inaccurate. The use of the word "defense" is particularly dangerous given the critical distinction between "negative" defenses and "affirmative" defenses.

We agree with Reynosa's concession that the use of the word is "technically accurate." That is as accurate as one can be.

Reynosa has not explained how the use of "defense" conveys the impression to a reasonable juror that Reynosa must prove something to avoid conviction. We find no hint or implication in the word "defense" that Reynosa bears the burden of proving anything. Reference to either Webster's 3rd International Dictionary (1976) or Black's Law Dictionary (5th ed. 1979) characterizes a defense as evidence or a reason offered by a defendant to defeat the prosecutor's claim. There is nothing in the word that expresses or implies who it is that bears the

burden of production or persuasion. The matter of allocation of burdens of proof is a legal subject of some complexity that is not dispelled by a claim of implication unsupported by verbiage other than the word "defense."

We also note that the term "defense" is used twice in the pattern jury instruction, Wis J I—Criminal 765, Part I, approved by our supreme court in *Schulz, supra,* 102 Wis. 2d at 431 n. 2, 307 N.W.2d at 156, n. 2.

Reynosa also complains about the provision that *Scott, supra,* 529 F.2d at 340, and *Schulz, supra,* 102 Wis. 2d at 433, 307 N.W.2d at 157, found to be a necessary instruction component. Reynosa's brief states:

> Other portions of the intoxication instruction tend to place the burden of persuasion on the defendant. The language of the intoxication instruction, "If you have any reasonable doubt as to whether or not defendant was so intoxicated,[2] you must give the benefit of that doubt and find him not guilty of first degree murder," is accurate but incomplete advice, because it leaves the jury with the impression that it was defendant's obligation to produce evidence sufficient to create a reasonable doubt in the jurors' minds.

Reynosa has provided no rationale or support for his assertion that the quoted instruction was error and we are unable to discover either a rationale or an error which leaves an impression with a reasonable juror that Reynosa had the burden to produce evidence sufficient to create doubt in such juror's mind.

Reynosa also asserts that the instruction should have stated that the state was required to prove beyond a reasonable doubt that defendant was not "so intoxicated" and that Reynosa did not in fact form the requisite

---

[2] "So intoxicated" was defined in the instruction as "that degree of intoxication that means he was utterly incapable of forming the intent" to kill.

specific intent to kill. We reject such a contention because it would require the state to prove matters that are not elements of the crime of first-degree murder.

Reynosa objects to the language in paragraph three of the challenged instruction that due to intoxication, one is "relieved from responsibility for criminal acts." His argument is that he was not seeking to be exonerated for his acts, but instead to be found guilty of second-degree murder, and that this language misled the jury and Reynosa was denied due process. We disagree.

This language is not to be read in isolation, but must be read in context of the entire jury instruction. *Moes v. State,* 91 Wis. 2d 756, 768, 284 N.W.2d 66, 72 (1979). The jury was cautioned in the first and last paragraphs of the Reynosa instruction that intoxication was a defense to first-degree murder only. Two other times intoxication was expressly linked to only first-degree murder. In the final paragraph, the jury was told intoxication is not a defense to second-degree murder. In context, we do not believe the jury was misled by the language isolated by defendant.

Reynosa also complains that the instruction phraseology which refers to "incapable" and "utterly incapable" of forming the intent to kill focused the jury's attention on his capacity to form that intent rather than whether he did in fact form such intent. We find no error in that regard. The intoxication defense prescribed by sec. 939.42, Stats., as interpreted by our supreme court addresses itself to the capacity of an accused to form specific intent when he is intoxicated. The instructions repeatedly apprised the jury that it must determine whether Reynosa had the intent to kill. Because evidence of his intoxication was received, it was incumbent upon

the jury to evaluate the element of intent to kill in the context of his capacity to form that intent if the jury believed he was intoxicated. The jury was so informed. A reasonable juror would not interpret the instructions as suggesting discrete or mutually exclusive determinations of the intent to kill.

*By the Court.*—Judgment and order affirmed.