STATE of Wisconsin, Plaintiff-Respondent,

v.

Jason PETTIT, Defendant-Appellant. [Case No. 91–2825–CR.]

STATE of Wisconsin, Plaintiff-Respondent,

v.

Reese IWEN, Defendant-Appellant. [Case No. 91–2905–CR.]

Court of Appeals

*Nos. 91–2825–CR, 91–2905–CR. Submitted on briefs May 29, 1992.—Decided October 7, 1992.*

(Also reported in — N.W.2d —.)

On behalf of the defendant-appellant, Jason Pettit, the cause was submitted on the brief of *Carol J. Lazzaro* of Waukegan, Illinois.

On behalf of the defendant-appellant, *Reese Iwen,* the cause was submitted on the brief of *Patricia Flood,* assistant state public defender.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle,* attorney general, and *Maureen McGlynn Flanagan,* assistant attorney general.

Before Nettesheim, P.J., Anderson and Snyder, JJ.

NETTESHEIM, P.J. Jason Pettit and Reese Iwen (the defendants) appeal from judgments of conviction for armed burglary as parties to the crime, contrary to secs. 939.05 and 943.10(1)(a) and (2), Stats. They argue that a jury instruction not only misstated the law, but also denied them their constitutional right to due process by placing on them the burden of disproving the "intent to steal" element of the respective armed bur-

glary charges.[1] Because we conclude that the trial court's instruction neither misstated the law nor placed the burden of persuasion on Pettit or Iwen regarding the element of intent, we affirm the judgments of conviction for armed burglary.

Pettit also argues that the state's failure to disclose certain discovery materials deprived him of a fair trial. Because we conclude that the state's failure to disclose the materials did not prejudice Pettit, we disagree with his contention that he was deprived of a fair trial. We decline to address Pettit's additional issues because his brief fails to adequately address the issues and otherwise violates fundamental briefing rules of this court.

## FACTS AND TRIAL EVENTS

The defendants' convictions arise from an occurrence on the evening of July 23, 1990. On that date, Pettit, Iwen and another friend, Shane Ingram, went to Larry Morrison's trailer home to recover money Pettit believed Morrison had stolen from him two days before.[2] Pettit, Iwen and Ingram entered the trailer and accused Morrison of having stolen Pettit's money. Also present at the trailer home was Morrison's son, Travis. Though the parties presented substantially different versions of that confrontation during the trial, they agree that after

---

[1] Pettit and Iwen were tried together as codefendants. On appeal, both raise the common issue regarding the propriety of the jury instructions, although Pettit raises other issues. Therefore, we consolidated these appeals by order of this court on March 19, 1992.

[2] Shane Ingram was also charged and convicted of armed burglary as a party to the crime and was tried together with Pettit and Iwen in the trial court. Although he was a codefendant of Pettit and Iwen at the trial, Ingram has not appealed his conviction.

631

Pettit and Morrison argued for several minutes, the two fought about Pettit's accusation that Morrison stole the money. The parties disagree, however, as to whether Pettit took a ten dollar bill and some change from Larry Morrison's pants pocket during the course of the confrontation, whether a handgun was displayed, and whether Iwen stole several compact discs (CD's) from Travis Morrison's bedroom located at the rear of the trailer.

The state charged the defendants as parties to the crimes of armed robbery and armed burglary with intent to steal. The defendants' principal defense at trial was that they lacked the requisite intent to steal as to both charges. Their defense stemmed from events of two days earlier, on the evening of July 21, 1990. On that day, while Pettit was at the home of his girlfriend, Lauren Bloom, someone stole approximately $840 belonging to Pettit from Bloom's purse. Though Pettit testified that he identified both Larry Morrison and Bloom's cousin, Sheila Musselman, as suspects when he reported the theft to the police, it was undisputed at trial that Pettit later believed that Morrison was responsible for the theft. Consequently, Pettit and Iwen claimed at trial that they went to Morrison's trailer only to retrieve the money Pettit believed Morrison had stolen, not to steal property belonging to either Larry or Travis Morrison. Pettit further denied that he took any money from Morrison during the confrontation.

At the jury instruction conference after the close of the evidence, the trial court stated that it intended to augment the "intent to steal" language of the standard armed robbery and armed burglary instructions. The proposed change was to reflect the defendants' "self-help" defense that they were simply trying to repossess the money that Pettit believed Morrison had stolen. The

court's proposed instruction, similar in part to one submitted by the state, was based on the language and holding of *Edwards v. State,* 49 Wis. 2d 105, 181 N.W.2d 383 (1970).

The defendants objected to the trial court's proposed instruction, arguing that it improperly placed on them the burden of disproving the intent to steal element of the respective charges. They argued that the intent to steal language of the standard armed robbery and armed burglary instructions sufficiently covered the applicable law.[3] The trial court overruled the defendants' objections and gave its augmented version of the standard instructions.

Before delivering the specific armed robbery and armed burglary instructions, the trial court recited the charges against the defendants and instructed the jury that "[t]o [these charges] each of the defendants has entered a plea of not guilty, which means the State must prove every element of the offense charged as to each defendant beyond a reasonable doubt." As to the armed burglary charge, the court also admonished the jury that "[b]efore the defendants may be found guilty of burglary, the State must prove by evidence which satisfies you beyond a reasonable doubt that the following five elements were present." The court then gave the jury the standard armed burglary instructions, including the following language regarding the element of intent:

> The fourth element of this offense requires that the defendant entered the building with intent to steal. That is, that he had a mental purpose to take and carry away moveable property of another with-

---

[3]In addition, Iwen requested that the trial court adopt his modified version of the standard instruction.

out consent and with intent to deprive the owner permanently of possession of such property.

This intent to steal must be formed before entry is made. The intent to steal, which is an essential element of burglary, is no more or less than the mental purpose to steal formed at any time before the entry, which continued to exist at the time of the entry.

You cannot look into a man's mind to find out his intent. While this intent to steal must be found as a fact before you can find the defendants guilty, it must be found, if found at all, from their acts and their words and statements, if any, bearing upon their intent.

*See* Wis J I—Criminal 1422 and 1480.

However, consistent with its earlier ruling, the court augmented the preceding "intent to steal" language with the following additional instruction addressing the defendants' "self-help" theory of defense:

Evidence has been received in this trial that one or more of the defendants believed he had a bona fide claim to money possessed by Larry Morrison. The use of self-help by force to enforce a bona fide claim for money does not necessarily negate an intent to steal. A person may have intent to steal when he takes money from another's possession against the possessor's consent even though he intends to apply the money to what he believes is a bona fide claim.

Unless an accused can trace his ownership to specific coins and bills in the possession of another, the other is the owner of the money in his pocket.

After giving the above instruction, the trial court again cautioned the jury that it must find the defendants not guilty unless satisfied beyond a reasonable doubt as to the existence of each element of the crimes.

634

The jury acquitted the defendants of armed robbery, but found them guilty of armed burglary. The defendants appeal.

## SELF-HELP INSTRUCTION

We discern two clear issues from the defendants' appellate briefs on this subject: (1) that the "self-help" jury instructions under *Edwards v. State,* 49 Wis. 2d 105, 181 N.W.2d 383 (1970), misstated the law by focusing on the defendants' intent to steal at the time of the alleged thefts—not at the time of the entry into Morrison's trailer; and (2) that the "self-help" instructions improperly shifted the burden of proof to the defendants, requiring them to disprove the intent to steal element.

What is less clear is whether the defendants are also challenging *any* instructional application of "self-help" law to a charge of armed burglary. Despite this uncertainty, we choose, nonetheless, to address this issue for two reasons: (1) at trial, the defendants objected to any departure from the standard instructions and, as we have noted, their briefs arguably renew this issue on appeal; and (2) a discussion of the defendants' other issues related to the instructions draws us into this threshold question in any event.

### 1. Application of "Self-help" to Armed Burglary[4]

In *Edwards,* the supreme court addressed how a "self-help" effort to collect money by armed robbery affected the element of intent to steal. The court stated:

---

[4]Our references to the armed burglary charge in this opinion consciously bear in mind that we deal here with a charge of armed burglary with intent to steal. *See* sec. 943.10(1), Stats. The discussion and holding of this opinion as it applies to intent to steal

We think the intent to steal is present when one at gunpoint or by force secures specific money which does not belong to him in order to apply it by such self-help to a debt owed to him. . . . Unless the accused can trace his ownership to specific coins and bills in the possession of the debtor, the debtor is the owner of the money in his pocket and it is theft to take it from his possession with intention to perma-nently deprive him of its possession regardless of what other motive or intention the accused has.

The distinction between specific personal property and money in general is important. A debtor can owe another $150 but the $150 in the debtor's pocket is not the specific property of the creditor. One has the intention to steal when he takes money from another's possession against the possessor's consent even though he also intends to apply the stolen money to a debt. . . . A debt is a relationship and in respect to money seldom finds itself embedded in specific coins and currency of the realm. Consequently, taking money from a debtor by force to pay a debt is robbery.

*Id.* at 113–14, 181 N.W.2d at 387–88.

■

Thus, *Edwards* establishes that to negate the intent to steal, a defendant must show that the money repossessed consisted of the exact coins and currency owed to him. Both crimes as charged here—armed robbery and armed burglary—required proof of an intent to steal. We are unable to discern any reason why an instruction that incorporates the *Edwards* principle, announced in an armed robbery/intent to steal case, is not also applicable in an armed burglary/intent to steal case. We therefore

would not apply where burglary is charged "with intent to . . . commit a felony." *See id.*

636

conclude that the trial court properly applied the "self-help" principles of *Edwards* to this armed burglary case.

## 2. Time of Intent to Steal

The defendants next argue that the "self-help" instruction as it pertained to armed burglary misstated the law because it told the jury that "[a] person may have intent to steal when he takes money from another's possession . . . even though he intends to apply the money to . . . a bona fide claim." The defendants contend that this language was incorrect as to the armed burglary charge because it directed the jury to focus the intent inquiry on the time when Larry Morrison's money or Travis Morrison's CD's were taken, instead of at the time of the defendants' entry into Morrison's trailer. Stated somewhat differently, the defendants argue that the trial court failed to tailor the *Edwards* language, offered in an armed robbery setting, to the facts of this case which presented an armed burglary setting.

If we were to consider the "self-help" language in isolation, we would agree with the defendants that it might suggest that an alleged burglar's intent is measured at the time of the later theft—not at the time of the entry. Thus, this portion of the instruction should have been more focused as to when the requisite intent must exist in a burglary situation.

However, we must also bear in mind that if the overall meaning communicated by an instruction as a whole was a correct statement of the law, it will not be interfered with on appeal. *See United States v. McNeese,* 901 F.2d 585, 606 (7th Cir. 1990). Jury instructions are not to be judged in artificial isolation, but must be viewed in the context of the overall charge.

*Mullaney v. Wilbur,* 421 U.S. 684, 704–05 (1975) (Rehnquist, J., concurring). *See also Barrera v. State,* 109 Wis. 2d 324, 330–31, 325 N.W.2d 722, 725 (1982); *State v. Reynosa,* 108 Wis. 2d 499, 510, 322 N.W.2d 504, 510 (Ct. App. 1982).

Here, we are not persuaded that the instructions, when viewed as a whole, misstated the law or misdirected the jury on this question. Apart from the language which the defendants isolate, the jury had previously been clearly instructed that "[t]he fourth element of this offense requires that the defendant *entered the building with intent to steal.*" (Emphasis added.) Later, the court instructed that "*[t]he intent to steal must be formed before entry is made.* The intent to steal . . . is no more or less than the *mental purpose to steal formed at any time before the entry, which continued to exist at the time of the entry.*" (Emphasis added.)

This same point was also driven home by the defendants' attorneys during their opening and closing arguments to the jury. And, the state's arguments to the jury did not misrepresent the law on this question. Viewing the jury instructions as a whole, we conclude that the trial court did not misstate the law nor misdirect the jury on its inquiry into the element of intent to steal.

****

Under sec. 805.18(2), Stats., we may not reverse a judgment or grant a new trial for misdirection of the jury unless an examination of the entire action leads us to conclude that the misdirection affected the substantial rights of the party seeking relief on appeal.[5] To deter-

---

[5]Section 805.18(2), Stats., states:

No judgment shall be reversed or set aside or new trial granted in any action or proceeding on the ground of drawing, selection or misdirection of jury, or the improper admission of evidence, or for error as to any matter of pleading or procedure, unless in the opinion

mine whether the "substantial rights" of a party have been affected, we use the harmless error test. *Heggy v. Grutzner,* 156 Wis. 2d 186, 196, 456 N.W.2d 845, 850 (Ct. App. 1990); *see also State v. Dyess,* 124 Wis. 2d 525, 542–43, 370 N.W.2d 222, 231–32 (1985). An error is harmless in a criminal case if there is no reasonable possibility that the error contributed to the conviction. *Id.* at 543, 370 N.W.2d at 231–32. The discussion just concluded satisfies us that, if any error is couched in the isolated portion of the "self-help" instruction, such error was harmless.

### 3. Due Process/Burden of Proof

The defendants next argue that the "self-help" portion of the instruction denied them their constitutional right to due process by shifting the burden of proof to them on the element of intent. They challenge the following portion of the "self-help" instruction: "Unless an accused can trace his ownership to specific coins and bills in the possession of another, the other is the owner of the money in his pocket." The defendants claim that this language improperly required them to disprove the "intent to steal" element of the armed burglary charges.

Whether the jury instructions given by the trial court violated a defendant's right to due process is a question of law. *State v. Kuntz,* 160 Wis. 2d 722, 735, 467 N.W.2d 531, 535 (1991). This court decides questions of law independently without giving deference to the trial court's decision. *See State v. Bertrand,* 162 Wis. 2d 411, 415, 469 N.W.2d 873, 875 (Ct. App. 1991).

of the court to which the application is made, after an examination of the entire action or proceeding, it shall appear that the error complained of has affected the substantial rights of the party seeking to reverse or set aside the judgment, or to secure a new trial.

The defendants cite to *State v. Schulz,* 102 Wis. 2d 423, 307 N.W.2d 151 (1981), to support their argument. *Schulz* recognized that under the principles outlined in *Mullaney v. Wilbur,* 421 U.S. 684 (1975), the burden of persuasion cannot be placed upon a defendant as to a defense which serves to negate an element that the state must prove to convict. *See Schulz,* 102 Wis. 2d at 429-30, 307 N.W.2d at 156. *Schulz* also recognized, however, that the state is not required in every case to prove the absence of a negative defense. *See id.* at 430, 307 N.W.2d at 156. And, a defendant's due process rights are not violated when a *burden of production,* as opposed to a *burden of persuasion,* is placed upon a defendant to start matters off by putting in some evidence of the negative defense. *Id. See also Mullaney,* 421 U.S. at 695 n.20, 701 n.28; *State v. Hedstrom,* 108 Wis. 2d 532, 535, 322 N.W.2d 513, 515 (Ct. App. 1982); W. LaFave & A. Scott, Criminal Law 46-47 (1972).

Consequently, it is necessary for a defendant to come forward with some evidence of the negative defense to warrant the jury's consideration of the issue. *Hedstrom,* 108 Wis. 2d at 535, 322 N.W.2d at 515. This test is satisfied if it can be said that the negative defense evidence, construed most favorably to the defendant, could lead a reasonable juror to conclude that an element essential to the crime is negatived. *Schulz,* 102 Wis. 2d at 430, 307 N.W.2d at 156. If so, the burden is upon the state to prove beyond a reasonable doubt that the defendant's evidence did not negate an element necessary to convict. *See id.* In attempting to do so, the state may present rebuttal evidence or stand on the proofs already submitted in its case-in-chief. *Id.* at 430-31, 307 N.W.2d at 156. However, negative defense or not, the teachings

of *Mullaney* and *Schulz* are that the burden of proof at all times as to all elements remains with the state.

Thus, in this case, the state was not required to prove in its case-in-chief that the money the defendants appropriated from Morrison was not the same money which Pettit claimed Morrison had allegedly stolen from him. Rather, since "self-help" was the negative defense of the defendants, they were properly required to introduce evidence in support of that theory. Thereafter, if the "self-help" evidence, viewed most favorably to the defendants, could have led a reasonable juror to conclude that the defendants repossessed from Morrison the very moneys which Morrison had previously stolen from Pettit, then the state was required to prove beyond a reasonable doubt that such was not the case.[6]

■■■■

Here, the instruction correctly told the jury when and how "self-help" constituted a defense: if the defendants repossessed any money from Morrison, it was their mutual burden to *produce* evidence that such moneys were the identical funds previously stolen by Morrison. This language did not tell the jury that the defendants had the burden of *proof* that they lacked the intent to steal. Thus, the distinction between the burden of persuasion and the burden of production was properly

---

[6]From our reading of the record, we have some doubts that the "self-help" evidence, viewed in a light most favorable to the defendants, would lead a reasonable juror to conclude that the moneys taken from Morrison were the same moneys which Pettit claimed Morrison had previously stolen from him. Therefore, we question whether the "self-help" instruction should even have been given. Ironically, although the defendants proffered "self-help" evidence, it was the state which suggested the instruction and it was the defendants who objected.

applied in this case. The defendants did not suffer any improper shifting of the burden of proof.

Alternatively, even if we were to conclude that the instruction, again viewed in isolation, placed an improper burden on the defendants, we would not reverse. We recall here our discussion on the preceding issue—particularly our obligation to view the instructions as a whole. *Mullaney,* 421 U.S. at 704–05 (Rehnquist, J., concurring); *Barrera,* 109 Wis. 2d at 330–31, 325 N.W.2d at 725. The objectionable language complained of consisted of but a single sentence included as part of a sequence of instructions on intent, wherein the jury was explicitly told several times that the state must prove every element of the armed burglary charges, including intent, beyond a reasonable doubt. In the preliminary instructions, the jury was similarly instructed.

Unlike *Schulz,* the challenged language in this case did not overshadow the instruction to the point where it could not be counterbalanced by jury instructions which accurately stated the law. *See Schulz,* 102 Wis. 2d at 434–35, 307 N.W.2d at 158. Reading all of the instructions on the issue of intent to steal *in toto,* we conclude that this isolated, limited language would not lead a reasonable juror to conclude that the defendants had the burden of disproving the intent to steal element of the armed burglary charges.[7]

---

[7]Although we find no error in the instruction in this case, we suggest that a "self-help" instruction of the type used here ideally should be accompanied by proximate language which stresses again that the state retains the burden of proof on the element of intent.

## PETTIT'S ADDITIONAL ISSUES

Pettit separately raises a host of other issues. We address only one on the merits.

Pettit contends that he is entitled to a new trial because the state did not disclose a police report documenting the investigation of his theft complaint against Morrison. Pettit contends that this tardy disclosure deprived him of a fair trial.

Prior to trial, Pettit filed a discovery motion seeking disclosure of exculpatory evidence under *Brady v. Maryland,* 373 U.S. 83 (1963). Specifically, this motion sought, *inter alia,* all police reports and related information concerning the theft complaint which Pettit had previously lodged against Morrison. Prior to trial, the state represented that it had turned over to Pettit all such material.

At the trial, Morrison testified during recross-examination that he knew that Pettit had filed a police report which accused him of stealing Pettit's money. Morrison also testified that the police came to his trailer home to talk to him about the theft. He denied, however, discussing any possible charges against him with any member of the police department or the district attorney's office, a fact that was substantiated at trial by the state.

After Morrison had testified, a search of the police department file revealed a supplemental, one-paragraph investigative report summarizing certain contacts with Morrison by the police department. This report had not previously been turned over to Pettit. The report stated that Morrison denied the theft of Pettit's property and, in light of that denial, that he did not think he should have to submit to a polygraph test. Pettit sought a mistrial. The trial court denied this request in an unreported proceeding. However, the court also ruled that it would

not require Pettit to rest his case until he had an opportunity to interview the detective who prepared the report.

In *Brady,* the Supreme Court held that the suppression by the prosecution of evidence favorable to an accused violates due process where the evidence is material either to guilt or punishment. *Id.* at 87. The *Brady* rule applies as well where the nondisclosure of the evidence goes to the credibility of a witness. *Giglio v. United States,* 405 U.S. 150, 154 (1972); *State v. Nerison,* 136 Wis. 2d 37, 54, 401 N.W.2d 1, 8 (1987). However, evidence is material under *Brady* "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley,* 473 U.S. 667, 682 (1985). Here, we will assume *arguendo* that the report is exculpatory and that the state was obliged to disclose it to Pettit prior to trial. We thus move to the prejudice question. Pettit argues that he could have used the one-paragraph police report documenting this information to impeach Morrison's credibility. However, on Morrison's recross-examination, Pettit's counsel fully explored with Morrison the fact that Pettit filed a police report accusing Morrison of stealing Pettit's money and that an officer came to Morrison's trailer home to question Morrison about the theft. Pettit's counsel also asked Morrison on recross whether he was ever formally charged with the theft of Pettit's money, or whether any representative of Kenosha county or the district attorney's office had discussed with him the possibility of being charged. Though the police report was not disclosed until after Morrison's testimony, the probative value of the information within the report with regard to Morrison's credibility was already fully before the jury.

We are thus unable to discern how possession of the police report prior to Morrison's testimony would have assisted Pettit to impeach Morrison's credibility more effectively.

In addition, after the report was disclosed, the trial court offered Pettit the opportunity, before resting his case, to interview the detective who questioned Morrison about the theft and who wrote the report. The record reveals no follow-up by Pettit to this offer.

■■■

Pursuant to sec. 805.18(2), Stats., we are not to order a new trial unless an examination of the entire action leads us to conclude that the error complained of affected a substantial right. An error is harmless if there is no reasonable possibility that the error contributed to the conviction. *Dyess,* 124 Wis. 2d at 542–43, 370 N.W.2d at 231–32. Based upon the content of the report, the testimony of Morrison, and the trial court's offer to Pettit to accommodate this development, we see not the slightest hint of prejudice to Pettit.

Finally, Pettit proposes a host of additional arguments which he contends entitles him to a new trial. He argues that: (1) the court erred in finding probable cause for his arrest and in not suppressing evidence seized after the arrest, (2) the court erred in allowing the state to use a visual display of the elements of armed burglary during its opening and closing arguments, (3) he was denied a fair trial when Larry Morrison testified that Pettit asked him for his "drug money," (4) the nondisclosure of juvenile records of one of the victims denied him his right to confrontation, and (5) the court erred in determining that only two of Larry Morrison's prior convictions were admissible under sec. 906.09, Stats.

We choose not to address these arguments because Pettit's brief violates a host of appellate rules. Pettit and Iwen are represented by separate counsel on these consolidated appeals. We stress that the brief we criticize is *not* that submitted on Iwen's behalf by Attorney Patricia Flood. First, in support of his meager arguments, Pettit often cites to what appears to be a transcript of a suppression hearing which was not included as part of the record on appeal. An appellate court's review is confined to those parts of the record made available to it. *See Nelson v. Schreiner,* 161 Wis. 2d 798, 804, 469 N.W.2d 214, 217 (Ct. App. 1991).

Second, Pettit's arguments are not developed themes reflecting any legal reasoning. Instead, the arguments are supported by only general statements. We may decline to review issues inadequately briefed. *See State v. S.H.,* 159 Wis. 2d 730, 738, 465 N.W.2d 238, 241 (Ct. App. 1990). *See also* Rule 809.19(1)(e), Stats.

Third, Pettit cites no legal authority in support of these claims. Arguments unsupported by references to legal authority will not be considered. *See State v. Shaffer,* 96 Wis. 2d 531, 545–46, 292 N.W.2d 370, 378 (Ct. App. 1980).

Fourth, Pettit's brief does not comport with the requirements of Rule 809.19(1)(e), Stats., governing the arrangement of argument in the order of the statement of issues.[8] In fact, one of Pettit's arguments (general as it

---

[8]Rule 809.19(1), Stats., provides in relevant part:

BRIEF OF APPELLANT. The appellant shall file a brief within 40 days of the filing in the court of the record on appeal. The brief must contain:

. . ..

(d) A statement of the case, which must include: a description

is) does not even remotely relate to its statement of the issue.

We sometimes (perhaps too often) make allowances for appellate counsel's failure to abide by these rules. However, the Court of Appeals of Wisconsin is a fast-paced, high-volume court. There are limits beyond which we cannot go in overlooking these kinds of failings. Pettit's brief is so lacking in organization and substance that for us to decide his issues, we would first have to develop them. We cannot serve as both advocate and judge.[9] In light of Pettit's inadequate briefing of these remaining issues, we decline to address them. *See* Rule 809.83(2), Stats.

*By the Court.*—Judgments affirmed.

of the nature of the case; the procedural status of the case leading up to the appeal; the disposition in the trial court; and a statement of facts relevant to the issues presented for review, with appropriate references to the record.

(e) An argument, arranged in the order of the statement of issues presented. The argument on each issue must be preceded by a one sentence summary of the argument and is to contain the contention of the appellant, the reasons therefor, with citations to the authorities, statutes and parts of the record relied on as set forth in the Uniform System of Citation and SCR 80.02.

[9] We might add the famous "performing bear" precept to this recital. *See State v. Waste Management of Wis., Inc.,* 81 Wis. 2d 555, 564, 261 N.W.2d 147, 151, *cert. denied,* 439 U.S. 865 (1978).