## COURT OF APPEALS
## DECISION
## DATED AND FILED

## August 12, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP361-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2021CF238

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

 V.

JONATHON MARSHALL HUGHES,

    DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Sawyer County: STEVEN P. ANDERSON, Judge. *Reversed and cause remanded for further proceedings.*

Before Stark, P.J., Hruz, and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM.  A jury found Jonathon Marshall Hughes guilty of two counts of first-degree recklessly endangering safety and two counts of aggravated battery for stabbing two men outside of a bar.  Hughes appeals from his judgment of conviction, arguing that the circuit court erred by denying his request for a self-defense jury instruction.

¶2      Although this is a close case, we agree that the circuit court erred by failing to instruct the jury on self-defense.  The evidence presented at trial was sufficient to satisfy the low evidentiary bar in this state for a self-defense instruction.  Accordingly, we reverse Hughes' judgment of conviction and remand this case to the circuit court for a new trial.

## BACKGROUND

¶3      On July 17, 2021, at around 2:00 a.m., police officers responded to a report "of a stabbing" outside of a bar in Hayward, Wisconsin.  When law enforcement arrived, they spoke with several witnesses both at the bar and at the hospital, including the two victims who had been stabbed: Sam Phillips and Lester Neil.[1]  The witnesses provided officers a physical description of the assailant, describing him as "a male, 5'6" to 5'8". 130 or 150 pounds wearing a black Punisher t-shirt and balding."  The following morning, after law enforcement conducted an investigation, that individual was identified as Hughes.  Hughes was

---

[1] Pursuant to the policy underlying WIS. STAT. RULE 809.86(4) (2023-24), we use pseudonyms instead of the victims' names.  We use the same pseudonyms utilized by Hughes and the State.

All references to the Wisconsin Statutes are to the 2023-24 version.

then arrested in his home. According to the arresting officers, Hughes had dried blood on his face and "a fresh injury to his forehead as well as two black eyes."

¶4 The State filed a five-count information, charging Hughes with two counts of aggravated battery, two counts of first-degree recklessly endangering safety, and one count of disorderly conduct. The case ultimately proceeded to a two-day jury trial.

¶5 At trial, the State presented testimony from 13 witnesses, and Hughes also testified in his own defense. The evidence revealed that Hughes first came to the bar with his sister, his sister's husband, and Hughes' adult son, and "everyone was in good spirits having fun." The State alleged, based on surveillance footage from the bar and witness testimony, that Hughes was intoxicated, which he did not dispute. Eventually, Hughes left the bar with his group.

¶6 Hughes returned to the bar alone approximately 20 to 25 minutes later. Hughes testified that before re-entering the bar, he was "assaulted by a woman" in the parking lot, who "punched [him] in the face." Thereafter, it is "undisputed" that Hughes was involved in an argument with an acquaintance of Phillips and Neil inside the bar. According to the acquaintance's testimony, he did not know Hughes, but Hughes "came up to" him, "seemed flustered[,] and was talking about girlfriend issues. And then said he wanted to fight." The other witnesses in the group with Phillips and Neil who testified stated that they told Hughes to leave and go home because they "were sick of him harassing us," but Hughes was "put[ting] up" a "bit of an argument." For his part, Hughes did not remember the argument. He stated that after the woman hit him outside the bar, "I remember feeling confused and I must have blacked out. And then when I came

3

to. I remember being in the back of the bar … and people telling me to go home and go to bed." Hughes then left the bar without any incident.

¶7 Hughes believed that the group followed him when he left the bar. Hughes testified that he "blacked out again and when [he] came to [he] was on Main Street sitting on [his] butt with [his] back up against a glass door feeling scared." According to Hughes, he "felt like [he] was being hunted, or pursued, or chased," and he "felt like someone was out to harm [him]. And that is when [he] heard footsteps running up to the corner in [his] direction." He testified that he was scared and confused, and he hid in the alleyway off of Main Street and retrieved the pocketknife that he always kept on his person.

¶8 Hughes further explained that he saw Phillips "stop at the corner and he looked the opposite direction of what the traffic comes in," and, based on that behavior, Hughes "felt that [Phillips] was looking for me." At that moment, Hughes noted that his "phone got a notification," which caused Phillips to "look[] over his shoulder," and Phillips "gave [Hughes] an evil grin." In Hughes' mind, the grin was saying, "I found you. I know where you are at." Hughes then "heard more footsteps[,] laughing[,] and running in [his] direction so [he] panicked because [he] felt they were after [him]." Hughes testified that he feared for his life, and he responded by pushing the man running toward him—Phillips—as hard he could before Hughes recalled being knocked to the ground and losing consciousness. Hughes said that the next thing he remembered was his "head jerking back" and "[h]earing sirens," and he picked himself off the ground and "just continued walking home."

¶9 Testimony from others in the group revealed that Phillips and Neil, along with two others, left the bar shortly after Hughes. Phillips explained that the

men did not follow Hughes. Instead, they "were all standing around outside smoking a cigarette" before heading to their cars. Phillips stated that his car was parked on Main Street, so he needed to walk through the alleyway, at which time he "felt blood running down [his] back," and he realized that he had been stabbed.

¶10 Neil explained that Hughes came out of the alleyway and attacked Phillips. According to Neil's testimony, he "heard a scuffle to begin with and then [he] turned around to see the man attacking [Phillips] from behind him." Neil then "grabbed" Hughes, stating that he "may have struck [Hughes] a time or two." During the altercation, Neil was stabbed in the stomach.

¶11 When the defense rested, Hughes requested a self-defense instruction at the jury instruction conference. After hearing arguments from the parties, the circuit court denied Hughes' request. On the record, the court briefly reviewed *State v. Johnson*, 2021 WI 61, 397 Wis. 2d 633, 961 N.W.2d 18, and it further "acknowledge[d] that the bar with regard to these instructions is low." The court then recounted Hughes' version of the events that evening. Ultimately, the court concluded that "[t]here is nothing in the evidence to show that [Hughes] would have any reasonable, rational need to protect himself." The court explained its ruling as follows:

> I think that the evidence that the State has presented in its case in chief shows that [the victims] … were walking back to their cars. That they had not threatened or been engaged in anything other than maybe some verbal back and forth with Mr. Hughes. That they did not know Mr. Hughes. That they had no history with Mr. Hughes, nor did Mr. Hughes have any history with them. It was as they were walking down the street where they were attacked by Mr. Hughes in an unprovoked fashion….
>
> So I just don't have any information in the record by which a reasonable jury can find that Mr. Hughes had the privilege of self-defense under those circumstances.

5

¶12    The jury found Hughes guilty of both counts of first-degree recklessly endangering safety and both counts of aggravated battery. The jury was unable to reach a decision on the disorderly conduct charge, and the circuit court declared a mistrial on that count. The court then sentenced Hughes to four years' initial confinement followed by four years' extended supervision on each count, to be served concurrently. Hughes appeals.

**DISCUSSION**

¶13    Hughes argues that the circuit court erred by denying his request to instruct the jury on self-defense. "A circuit court has broad discretion in deciding whether to give a requested jury instruction." *State v. Stietz*, 2017 WI 58, ¶12, 375 Wis. 2d 572, 895 N.W.2d 796. However, the court's "discretion is far more limited in some circumstances—including determining whether the evidence presented supports instructing the jury on … self-defense." *Johnson*, 397 Wis. 2d 633, ¶16. "Whether there are sufficient facts to warrant the circuit court's instructing the jury on self-defense is a question of law that this court decides independently," but with the benefit of the circuit court's analysis. *See Stietz*, 375 Wis. 2d 572, ¶14.

¶14    To receive a self-defense instruction, the defendant must present "some evidence" that he or she acted in self-defense. *Id.*, ¶16. This requirement is a "low bar," which may be satisfied by evidence that is "weak, insufficient, inconsistent, or of doubtful credibility." *Johnson*, 397 Wis. 2d 633, ¶17 (quoting *Stietz*, 375 Wis. 2d 572, ¶¶16-17). "A jury must be instructed on self-defense when a reasonable jury could find that a prudent person in the position of the defendant under the circumstances existing at the time of the incident could believe that he [or she] was exercising the privilege of self-defense." *Id.* (quoting

6

*Stietz*, 375 Wis. 2d 572, ¶15). In reaching this conclusion, "circuit courts must not weigh the evidence; rather, the evidence must be viewed in the light most favorable to the defendant." *Id.*

¶15 If we conclude that the circuit court erred by refusing to give a jury instruction, we must then determine whether the error affected the defendant's substantial rights. *Stietz*, 375 Wis. 2d 572, ¶61; WIS. STAT. § 805.18(2).

> A defendant's substantial rights remain unaffected (that is, the error is harmless) if it is clear beyond a reasonable doubt that a rational jury would have come to the same conclusion absent the error or if it is clear beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.

*Stietz*, 375 Wis. 2d 572, ¶63. Whether a jury instruction error is harmless is a question of law that we review de novo. *Id.*, ¶62.

¶16 Based on the evidence presented at trial, we conclude that Hughes was entitled to a self-defense jury instruction, and the circuit court erred by refusing to provide the jury with that instruction. Under WIS. STAT. § 939.48(1):

> A person is privileged to threaten or intentionally use force against another for the purpose of preventing or terminating what the person reasonably believes to be an unlawful interference with his or her person by such other person. The actor may intentionally use only such force or threat thereof as the actor reasonably believes is necessary to prevent or terminate the interference. The actor may not intentionally use force which is intended or likely to cause death or great bodily harm unless the actor reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or herself.

*See also* WIS JI—CRIMINAL 800 (2023).

¶17 Therefore, to be entitled to a self-defense instruction, Hughes "had to make an objective threshold showing that (1) he reasonably believed he was preventing or terminating an unlawful interference with his person, and (2) he

intentionally used only the force he reasonably believed was necessary to terminate that interference." *See Johnson*, 397 Wis. 2d 633, ¶20. Further, because the force he used was intended or likely to cause great bodily harm or death, Hughes also "needed to also show he reasonably believed the force he used was necessary to prevent great bodily harm or imminent death to himself." *See id.*

¶18 Under the facts of this case, we agree with Hughes that the circuit court misapplied the "some evidence" standard and improperly weighed the evidence to reach its own conclusion about the strength of the evidence and the credibility of the witnesses. The court explained its ruling denying the self-defense jury instruction by stating that "although Mr. Hughes felt hunted, felt pursued, felt he had to disguise his presence," "[t]here is nothing in the evidence to show that he would have any reasonable, rational need to protect himself." There was, however, evidence that an argument occurred at the bar that evening between Hughes and an individual who was at the bar with several friends, one of whom expressed at trial that they "were sick of [Hughes] harassing [them]." Further, Hughes' testimony presented evidence that after that argument, Hughes went outside and felt he was being hunted by these individuals. He thought that they had followed him outside and were standing around looking for him. The victims admitted that they had left the bar right after Hughes and that they were loitering outside the bar. Hughes additionally testified that he "had already been assaulted

that night" and that, as a result, he "was scared and in fear." Hughes then explained that he heard their footsteps "running" toward him, and he reacted.[2]

¶19 Thus, viewing the evidence in the light most favorable to Hughes, as we must, we conclude that the jury *could* have found that Hughes reasonably believed that the force he used was necessary to prevent an unlawful interference with his person when he stabbed the victims. At bottom, it is possible that a reasonable jury could have found Hughes' account more credible than the testimony of the other witnesses at the bar that evening. As Hughes argues, if that were the case, then "[a] reasonable jury could conclude … that Phillips (who was accompanied by three other men) rushed Hughes, and that Hughes[] reasonably believed that he needed to defend himself to the degree that he did in order to prevent great bodily harm." We also note that the fact that Hughes was actually injured—i.e., a fresh injury on his forehead and two black eyes—as noted by the officers who arrested him, provides further evidence in support of his belief that he was in danger.

¶20 In determining whether a defendant is entitled to a self-defense instruction, the test is not whether the circuit court believes the defendant or whether the jury *would* find that the defendant acted in self-defense. Instead,

---

[2] Based on this testimony, the State argues that Hughes is not entitled to a self-defense instruction because "Hughes was the aggressor." Thus, the State contends that "any claim that Hughes acted in self-defense by stabbing Phillips and Neil would need to rest on some unnamed acts of aggression by the men." As Hughes argues in his reply brief, however, "[t]he [S]tate cites no law for its proposition that citizens need to wait until they are attacked and harmed physically before they may lawfully defend themselves." *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) ("Arguments unsupported by references to legal authority will not be considered."). Further, WIS. STAT. § 939.48(1), the self-defense statute, specifically provides that a person is privileged to use force against another person to *prevent* an unlawful interference. *See also* WIS JI—CRIMINAL 800 (2023).

"[o]ur focus"—and the focus of the circuit court—must be "merely on whether a jury *could* conclude [the defendant] acted in … self-defense, not that [the jury] would or should reach that conclusion." *See **Johnson***, 397 Wis. 2d 633, ¶25 n.12 (emphasis added). That is why our supreme court directed that "circuit courts must not weigh the evidence; rather, the evidence must be viewed in the light most favorable to the defendant." *See **id.***, ¶17. Hughes' self-defense claim involves the weight and credibility of the evidence and the reasonableness of his beliefs, which are issues that are properly addressed to a jury.

¶21 In summary, the circumstances in the bar that evening as well as Hughes' own testimony about the events outside constituted "some evidence" that he acted in self-defense. *See **Stietz***, 375 Wis. 2d 572, ¶16. Therefore, Hughes has demonstrated that the circuit court erred by reaching its own conclusions about the strength of the evidence and by denying Hughes' request for a self-defense jury instruction.

¶22 Given that we have determined that the circuit court erred, we must also assess whether Hughes' substantial rights were affected. Under the circumstances, we conclude that the State cannot establish that the failure to provide the self-defense jury instruction was harmless error. As noted above, an error does not affect a defendant's substantial rights if it is clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error. *See **id.***, ¶63. Here, although it is a close case, we conclude that if the jury had been properly instructed, it *could* have found that Hughes did have a reasonable belief that he needed to act in self-defense and, therefore, may not have returned a guilty verdict. Thus, the error in refusing the self-defense jury instruction was not harmless.

¶23    The State asserts that the error was harmless because "[t]he case against Hughes was strong." It explains that "there was little doubt that Hughes was the person who stabbed Phillips and Neil," given that "Neil saw Hughes on Phillips before Hughes stabbed Neil with the knife" and "DNA identification evidence was presented showing that Phillips's and Neil's DNA was found on the blade of the knife recovered from Hughes'[] home."

¶24    As Hughes correctly argues, however, "[t]hat Hughes stabbed Neil and Phillips is neither disputed nor is it relevant to an assessment of the merits of Hughes'[] claim that he acted in self-defense." In this case, regardless of whether Hughes' claim of self-defense is an affirmative defense or a negative defense, *see State v. Austin*, 2013 WI App 96, ¶¶12-13 & n.6, 349 Wis. 2d 744, 836 N.W.2d 833, Hughes is not attempting to disprove that the acts or the injuries occurred. Instead, he is attempting to establish that his actions were reasonable, justified, or excused under the specific circumstances. Accordingly, the strength of the State's case related to the actual stabbing is irrelevant because it does not appear that Hughes is claiming that he was not there that night or that he was not the one to stab Phillips and Neil.[3]

---

[3] Hughes observes in his briefing that "neither Neil, nor any of the other [S]tate's witnesses saw Hughes stab Phillips," and, as a result, "[a]t the close of the [S]tate's case, the defense moved for a directed verdict, arguing that none of the [S]tate's witnesses had identified Hughes in court." In response, the circuit court permitted the State to reopen its case to admit identification evidence, which Hughes objected to because "by allowing the [S]tate to reopen the case, the defense was forced to make strategic changes to its case that it otherwise would not have made."

(continued)

¶25 Further, the State claims that Hughes' "self-defense claim was very weak." As we explained above, however, our supreme court has instructed that the requirement of "some evidence" is a "low bar," and it does not matter that the evidence is "weak, insufficient, inconsistent, or of doubtful credibility." *See Johnson*, 397 Wis. 2d 633, ¶17 (citation omitted). Regardless of our view of the relative strength of Hughes' defense, given that, as outlined above, Hughes asserted a viable self-defense claim and that the jury was deadlocked on the disorderly conduct charge, we cannot conclude "*beyond a reasonable doubt* that a rational jury would have come to the same conclusion absent the error." *See Stietz*, 375 Wis. 2d 572, ¶63 (emphasis added); *cf. Johnson*, 397 Wis. 2d 633, ¶31 n.17.

¶26 For the foregoing reasons, we conclude that Hughes is entitled to a new trial, and we reverse his judgment of conviction and remand to the circuit court for that purpose.

*By the Court.*—Judgment reversed and cause remanded for further proceedings.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

The circuit court disagreed with Hughes because it essentially determined that Hughes' defense was not that he was not the assailant: "I mean, your defenses are based upon, you know, self-defense. Your defenses are based upon the injuries. Your defenses are based upon, you know, whether Mr. Hughes was attacked in the parking lot. That has really been what the defenses have been." Nevertheless, despite making those statements, the court still refused to grant Hughes' request for a self-defense jury instruction. The court essentially deprived Hughes of both possible defenses.