COURT OF APPEALS
DECISION
DATED AND FILED

December 3, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP125**

STATE OF WISCONSIN

Cir. Ct. No. 2017CV287

IN COURT OF APPEALS
DISTRICT IV

CHRISTIAN FLEMING AND KRISTIN FLEMING,

PLAINTIFFS-APPELLANTS-CROSS-RESPONDENTS,

V.

RODGER NEITZELL AND NINETTE NEITZELL,

DEFENDANTS-RESPONDENTS-CROSS-APPELLANTS,

YVONNE G. MYSZKA,

DEFENDANT-RESPONDENT.

APPEAL and CROSS-APPEAL from a judgment of the circuit court for Jefferson County: WILLIAM V. GRUBER, Judge. *Affirmed*.

Before Fitzpatrick, P.J., Kloppenburg, and Graham, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM. This appeal and cross-appeal concern claims brought by Kristin Fleming and Christian Fleming against Rodger Neitzell and Ninette Neitzell, who sold their house to the Flemings in 2016, and against Yvonne Myszka, the Neitzells' realtor. The Flemings appeal the circuit court's dismissal of their claims, arguing that the court erred in excluding the testimony of two of their expert witnesses. The Neitzells cross-appeal the circuit court's denial of their motion for sanctions against the Flemings, arguing that the court misapplied the frivolous claims statute.

¶2      We conclude that the circuit court did not erroneously exercise its discretion either in excluding the testimony of the Flemings' experts or in denying the Neitzells' motion for sanctions. Therefore, we affirm.

## BACKGROUND

¶3      The following facts are undisputed. In 2016, the Neitzells listed their house for sale with realtor Myszka. The house, built in 1992, underwent numerous restoration repairs in 2012 after suffering a fire. Myszka advertised the house in a real estate listing that identified the house as built in 2012 and as between zero and five years old. A note near the bottom of the listing stated that the house was "originally constructed in 1992—90% destroyed in 2011 by fire, 2012 rebuilt per seller."

¶4      Kristen Fleming viewed the house immediately after it was listed. The Flemings wrote a cash offer on the house that same day, which the Neitzells accepted. After purchasing the house, the Flemings were dismayed to discover

that "the house hadn't been burnt to the ground," because this information conflicted with their belief that the entire above-ground structure of the house had been rebuilt in 2012. The Flemings brought this action against the Neitzells and Myszka alleging that the defendants had intentionally misrepresented the condition of the house and concealed defects in the house including faulty wiring and charred framing.

¶5 Prior to trial, the Flemings sought to present expert witness testimony. The circuit court excluded the testimony of the Flemings' two damages experts based on their failure to satisfy the **Daubert** standard, and it excluded all other experts based on the Flemings' noncompliance with a scheduling order. S*ee* **Daubert v. Merrell Dow Pharmaceuticals, Inc.**, 509 U.S. 579 (1993); WIS. STAT. § 907.02 (2017-18).[1] The Flemings informed the court that, due to the exclusion of the testimony of their damages experts, "going forward with the trial would be an exercise in futility" because they would not be able to prove damages. The court dismissed the Flemings' claims with prejudice. The court subsequently denied a motion by the Neitzells for sanctions against the Flemings. This appeal and cross-appeal follow.

¶6 We present additional undisputed facts throughout the discussion that follows.

---

[1] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

**DISCUSSION**

¶7    As a threshold matter, the Neitzells and Myszka argue that the Flemings waived their right to appeal by consenting to the circuit court's dismissal of their claims.  The Flemings argue that they did not consent to the judgment but rather merely "demonstrated candor to the court" regarding their inability to prove damages after all their experts were disqualified from testifying.  We assume, without deciding, that the Flemings did not waive their right to appeal.  Our discussion therefore proceeds directly to the underlying merits of the appeal and cross-appeal.  We first address the Flemings' appeal of the circuit court's orders excluding the testimony of their damages experts and second address the Neitzells' cross-appeal of the circuit court's order denying their motion for sanctions.

**I.  Exclusion of Expert Testimony.**

¶8    We first explain the standard of review and the general legal principles governing admission of expert testimony in Wisconsin.  We next provide additional background regarding the two proposed damages experts and summarize the circuit court's decisions excluding their testimony.  We then address and reject the Flemings' arguments against the circuit court's decisions.  Finally, we address and reject the Flemings' argument that the ***Daubert*** standard is generally flawed.

*A.  Standard of Review and General Legal Principles.*

¶9    When reviewing a circuit court's decision exercising its gatekeeping function regarding expert testimony, we first review de novo whether the circuit court applied the proper legal standard for reliability of expert testimony under

WIS. STAT. § 907.02(1). *Seifert v. Balink*, 2017 WI 2, ¶89, 372 Wis. 2d 525, 888 N.W.2d 816. Once satisfied that the court applied the appropriate legal framework, we review the court's decision for an erroneous exercise of discretion. *Id.*, ¶90. *Cf. State v. Jones*, 2018 WI 44, ¶27, 381 Wis. 2d 284, 911 N.W.2d 97.

¶10 Under the erroneous exercise of discretion standard of review, we affirm the circuit court's order if it is demonstrably based upon the facts appearing in the record, the appropriate and applicable law, and a rational mental process by which the facts of record and law relied upon are stated and are considered together for the purpose of achieving a reasoned and reasonable determination. *Seifert*, 372 Wis. 2d 525, ¶93 n.50 (citations omitted). A circuit court's decision admitting or excluding expert evidence is an erroneous exercise of discretion when the decision rests upon a clearly erroneous finding of fact, an erroneous conclusion of law, or an improper application of law to fact. *Id.*, ¶93.

¶11 The circuit court's determination regarding the admissibility of expert testimony is controlled by the *Daubert* standard. *Seifert*, 372 Wis. 2d 525, ¶51; WIS. STAT. § 907.02. The statute incorporating the *Daubert* standard provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if the testimony is based upon sufficient facts or data, the testimony is the product of reliable principles and methods, and the witness has applied the principles and methods reliably to the facts of the case.

WIS. STAT. § 907.02(1).

¶12    "The [circuit] court's gate-keeper function under the ***Daubert*** standard is to ensure that the expert's opinion is based on a reliable foundation and is relevant to the material issues." ***State v. Giese***, 2014 WI App 92, ¶18, 356 Wis. 2d 796, 854 N.W.2d 687.  The circuit court enjoys wide latitude both in deciding how to determine reliability and in determining whether the testimony is ultimately reliable. ***Seifert***, 372 Wis. 2d 525, ¶64.

### *B. Additional Background.*

¶13    We now provide additional background regarding the qualifications, reports, and planned testimony of each of the Flemings' two damages experts, and the circuit court's decisions excluding their testimony.

### *1.  Damages Expert Terry Carrick.*

¶14    The Flemings' first damages expert, Terry Carrick, is a certified property appraiser experienced in appraising commercial properties and apartment complexes for the State of Wisconsin Department of Revenue.  Carrick stated in a report, and planned to repeat in trial testimony, his opinion that the house's defects related to the fire and subsequent restoration diminished the value of the house by $313,080.  Carrick stated in his report that his opinion was "based on his knowledge and experience."

¶15    Carrick's report shows that he calculated diminished value as follows.

¶16    First, he opined that the house's value was diminished by ten percent of the purchase price, or $51,500, because of the fact that, if the Flemings were to sell the house, they would have to make mandatory disclosures regarding the fire

and restoration. Carrick based this figure on his "belie[f]" as to "Diminishment in Value due to the uncertainties & worries."

¶17    Second, Carrick opined that the house's value was diminished by three percent of the purchase price, or $15,450, because a future buyer's inspector might advise the potential buyer to be "careful & thoughtful in purchasing the property because of the many problems & uncertainties involved." The report does not explain how Carrick reached this figure.

¶18    Third, he opined that the house's value was diminished by $80,540 because the house was in fact twenty-four and not four years old. Carrick based this figure on his "[a]ssuming a 100 year life" for the house and calculating straight line deprecation for 20 years of depreciation. He based the choice to assume a 100-year life and apply straight line depreciation on his "belie[f]" that this was "a fair method of estimating the loss or damage."

¶19    Finally, Carrick opined that the house's value was diminished by $150,140 due to the necessity of various repairs. Carrick calculated the repair figure based on estimates from repair companies.

¶20    During the *Daubert* hearing on Carrick's admissibility as an expert, the circuit court asked the Flemings' counsel whether the figures that the report characterized as based on Carrick's belief were grounded in "some compilation of comparable properties" or some other method. Counsel stated that the opinion could be based only on "subjective judgment" because the Flemings' house was so "unique." The court stated that this is the same method that would be used by a "quote/unquote nonexpert fact witness" and counsel agreed. The court confirmed with counsel that Carrick was not a fire restoration expert and that he did not have experience in appraising single-family residential properties.

¶21    The circuit court excluded Carrick's testimony based on its determination that he was unqualified and had used an unreliable methodology. After hearing oral argument on the Flemings' subsequent motion for reconsideration, the court denied the motion based on its determination that the *Daubert* standard "is concerned with reliability and qualification" and that Carrick "[fell] short of those standards."

¶22    As to qualifications, the circuit court determined that, although Carrick had experience appraising commercial properties and apartment complexes, he lacked "training and experience" in appraising residential homes and that the Flemings failed to show that Carrick had qualifications "congruent" with his planned testimony.

¶23    As to methodology, the circuit court noted that Carrick's methodology in determining diminished value lacked reliability because it did not compare the house the Flemings purchased to comparable properties. The Flemings argued that the house could not be subject to a comparable sales analysis because it was "unique" and that therefore its appraisal was "subjective." The court determined that subjective determinations of value regarding unique properties do not comport with *Daubert* and contrasted Carrick's subjective methodology with comparable sales appraisal methodologies that courts have

found to be reliable. Accordingly, the court denied the Flemings' motion for reconsideration of its decision excluding Carrick's testimony.[2]

¶24    The court also granted the Flemings additional time to retain an expert "to substitute" for Carrick, and the Flemings subsequently proposed a second damages expert, Mark Peltin.

## 2. Damages Expert Mark Peltin.

¶25    The Flemings' second damages expert, Mark Peltin, is a certified appraiser who did not complete an appraisal of the Flemings' house but who planned to testify as to the dollar amount of the house's diminished value in light of the fire and restoration. Peltin prepared a report stating as follows.

¶26    Peltin did not develop an opinion of the house's value.

¶27    He opined that the Flemings' house had a total economic life of seventy-five years and the "effective age" of the Flemings' house was fifteen years. It had therefore depreciated twenty percent.[3] The report does not state how Peltin determined either the house's total economic life or its effective age.

---

[2] At this time the circuit court also struck all the Flemings' other proposed experts based solely on the Flemings' noncompliance with the court's scheduling order. In the conclusion to their argument, the Flemings briefly ask this court to reverse the circuit court's decision with respect to these experts but offer no argument that the court erred in striking the experts. The Flemings do not contest their noncompliance with the scheduling order. We do not further consider the Flemings' request because it is unsupported by any argument. *See Associates Fin. Servs. Co. of Wis., Inc. v. Brown*, 2002 WI App 300, ¶4 n.3, 258 Wis. 2d 915, 656 N.W.2d 56 (the court may decline to consider conclusory and undeveloped arguments that are not adequately briefed).

[3] This number is apparently based on the calculation of dividing the house's effective age (fifteen) by its total economic life (seventy-five).

¶28     Peltin's report explained that a house that had been entirely rebuilt in 2012 would have an effective age of four years and would have depreciated five percent.[4]  Because the Flemings' actual house had depreciated twenty percent, but the house they thought they were buying (one which had been entirely rebuilt) would have depreciated only five percent, the difference in depreciation was fifteen percent.

¶29     Peltin opined that it would cost $150 per square foot to rebuild the house, for a total of approximately $400,000.  The report does not state how Peltin reached his conclusion that the house would cost $150 per square foot to rebuild.

¶30     He opined that the fifteen percent difference in depreciation between the four-year-old house the Flemings thought they were getting and the fifteen-year-old house they actually got "should be applied to the value of the cost new of the dwelling" to determine the damages caused by the Neitzells' alleged misrepresentations.  This calculation, fifteen percent of $400,000, yields $60,000.

¶31     During the ***Daubert*** hearing on Peltin's admissibility as an expert, the circuit court asked the Flemings' counsel:  "[H]ow did he pick his variables? ... $150 per square foot.  Where did that come from?"  Counsel stated that the variable was based on Peltin's "expertise."  The court asked counsel, "[W]here did he get the numbers that he put into the formula [calculating damages]?"  Counsel stated that Peltin's decision to use seventy-five years for the house's total economic life and $150 for the cost per square foot to rebuild the house was based

---

[4] This number is apparently based on the calculation of dividing the house's effective age (four) by its total economic life (seventy-five).

on "his experience and opinion." Counsel confirmed that Peltin did not complete an appraisal of the house.

¶32 The circuit court excluded Peltin's testimony based on its determination that Peltin used an unreliable methodology. The court explained that Peltin's report did not "follow any recognized appraisal method" and did not provide any information on where variables used in calculating damages were "coming from." The court determined that counsel's statement that the variables were based on Peltin's "experience" was "too abstract" to satisfy the "normal rigors of something that qualifies [as] expertise or science" under *Daubert*.

### C. Flemings' Appellate Arguments.

¶33 As to Carrick, as best we can discern, the Flemings argue that the circuit court erred in excluding his testimony for two reasons. First, excluding Carrick based on an unreliable methodology was improper because diminished value is the proper measure of damages.[5] Second, excluding Carrick on the basis that his opinion was subjective was improper because real estate appraisal is by its nature subjective, all appraisers rely on a subjective process informed by their experience, and Carrick was an experienced real estate appraiser. We address these arguments in turn.

¶34 We reject the Flemings' first argument because they do not explain why, even assuming diminished value is the proper measure of damages, such a fact relates to the dispositive question of whether the methodology Carrick used to

---

[5] In their argument section, the Flemings improperly cite unpublished per curiam opinions without so disclosing. We caution counsel that an unpublished per curiam opinion may generally not be cited in any court of this state. WIS. STAT. § 809.23(3)(a) and (b).

calculate diminished value satisfied the **Daubert** reliability standard. *See **State v. Pettit***, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) ("We may decline to review issues inadequately briefed.").

¶35  We reject the Flemings' second argument because the **Daubert** standard requires "more than subjective belief or unsupported speculation." **Daubert**, 509 U.S. at 590. *Cf. **Giese***, 356 Wis. 2d 796, ¶19 ("the testimony of the witness [is to be] 'more than subjective belief or unsupported speculation.'") (citation omitted). "Coursing through **Daubert** lore is a palpable fear of ipse dixit ('because I said so') testimony." **Giese**, 356 Wis. 2d 796, ¶19 (citation omitted). The court reasonably determined, based on counsel's testimony that Carrick's opinion was based on "subjective" belief, that Carrick's planned testimony would not comport with **Daubert**. Expert testimony must be "the product of reliable principles and methods." WIS. STAT. § 907.02(1).

¶36  To the extent that the Flemings argue that Carrick's subjective belief suffices because it was informed by his experience, we also reject that argument because, as the circuit court noted, Carrick's experience in appraisal, while significant, was limited to commercial properties and apartment complexes. The court reasonably determined that Carrick's experience was not "congruent" with his planned testimony regarding the Flemings' single-family residential house. The **Daubert** standard permits the admission of testimony only from someone who is "qualified as an expert by knowledge, skill, experience, training, or education." WIS. STAT. § 907.02(1). Because Carrick lacked experience in appraising residential houses, he could not rely on his "belief" informed by his experience to reach a reliable opinion as to the Flemings' residential house.

¶37     As to Peltin, as best we can discern, the Flemings argue that the circuit court erred for two reasons.  First, Peltin was qualified because he was experienced in conducting real estate appraisals.  Second, Peltin's methodology was reliable because he consulted *The Appraisal of Real Estate*, a book that the Flemings state is often referred to as "the appraiser's bible."  We address and reject these arguments in turn.

¶38     We reject the first argument because, as summarized above, the circuit court did not exclude Peltin on the basis that he lacked experience in appraisal, but rather on the basis that he did not actually complete an appraisal, did not follow any recognized appraisal methods, and did not explain where his variables used to calculate damages were "coming from."  The Flemings do not contest the court's findings of fact regarding Peltin's methods or offer any argument that the court's determination regarding the methodology was not based on correct law or on a rational mental process.  Peltin's qualifications do not bear on the question of whether his methodology was reliable.  Accordingly, we reject this argument as inapposite.

¶39     We reject the Flemings' second argument because the fact that Peltin relied on a certain treatise does not disturb the circuit court's determinations that Peltin did not "follow any recognized appraisal method" and that mere "experience" is too abstract an explanation for how Peltin arrived at the variables he used.  As stated above, expert testimony must be "the product of reliable principles and methods." WIS. STAT. § 907.02(1).  The court's determination that Peltin's methodology was unreliable was demonstrably based on facts appearing in the record in reliance on the appropriate and applicable law.  *See Seifert*, 372 Wis. 2d 525, ¶93 n.50.

¶40    In sum, as to both experts, we conclude that the Flemings have failed to show that circuit court's decisions rest upon a clearly erroneous finding of fact, an erroneous conclusion of law, or an improper application of law to fact.  *See Seifert*, 372 Wis. 2d 525, ¶93 ("A [circuit] court's decision on admissibility or exclusion of expert evidence is an erroneous exercise of discretion when a decision rests upon a clearly erroneous finding of fact, an erroneous conclusion of law, or an improper application of law to fact.").  Accordingly, we uphold the court's discretionary determinations excluding the testimony of the Flemings' two damages experts.

¶41    We now turn to the Flemings' argument, asserted separately from their arguments regarding the circuit court's application of *Daubert* to the expert testimony in this case, that the *Daubert* standard is generally flawed.  The Flemings argue that *Daubert* improperly treats all experts as scientists, discounts the value of experience, and improperly turns the circuit court judge into a "super expert in a technical field."  We reject these arguments for the following reasons.

¶42    First, our case law confirms that experience may be "good grounds" underlying an expert's testimony and rendering it reliable.  *Seifert*, 372 Wis. 2d 525, ¶67 ("*Daubert* affirms that experience-based expert evidence may pass muster as a method under the reliability requirement.").  The statute permits admission of expert testimony not only that is scientific or technical, but also that is "specialized."  WIS. STAT. § 907.02(1).  The circuit court enjoys wide latitude in deciding how to determine reliability, and may consider different factors in evaluating different types of experts.  *Seifert*, 372 Wis. 2d 525, ¶¶64-66.  Thus, our case law establishes that the *Daubert* standard does not treat all experts as scientists or discount the value of experience.

¶43     Second, our case law confirms that "*Daubert* makes the [circuit] court a gatekeeper, not a fact finder." *Id.* at ¶59. The court's obligation is not to become a "super expert" but rather to make "a preliminary assessment of whether the reasoning or methodology is scientifically valid." *Id.* at ¶61. When credible, qualified experts disagree, a litigant is entitled to have the jury, not the circuit court, decide which expert to believe. *Id.* at ¶59.

¶44     Third, even assuming that the Flemings' substantive criticisms of *Daubert* might have merit, *Daubert* is the law and that we are not at liberty to ignore it. Our legislature amended the Wisconsin Rules of Evidence in January 2011 to make Wisconsin law on the admissibility of expert testimony consistent with the *Daubert* reliability standard. *Seifert*, 372 Wis. 2d 525, ¶51 ("The 2011 amendment to WIS. STAT. § 907.02(1) changed the law to mirror Federal Rule of Evidence 702, which codifies *Daubert v. Merrell Dow Pharmaceuticals Inc.*, 509 U.S. 579, 113 S. Ct. 2786 (1993), and its progeny."). The Flemings cite no law that would allow us to disregard the standard in defiance of our legislature and our supreme court.

¶45     We now turn to the Neitzells' cross appeal.

## II.  Motion for Sanctions.

¶46     The Neitzells argue that the circuit court erred in denying their motion for sanctions under a frivolous claims statute, WIS. STAT. § 802.05. That statute provides in pertinent part:

> **(2) Representations to Court.** By presenting to the court, whether by signing, filing, submitting, or later advocating a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed

15

after an inquiry reasonable under the circumstances, all of the following:

> (a) The paper is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

> (b) The claims, defenses, and other legal contentions stated in the paper are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law.

> (c) The allegations and other factual contentions stated in the paper have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery….

> **(3) Sanctions.** If, after notice and a reasonable opportunity to respond, the court determines that sub. (2) has been violated, the court may impose an appropriate sanction upon the attorneys, law firms, or parties that have violated sub. (2) or are responsible for the violation[.]

Sec. § 802.05.

¶47 Whether to impose sanctions is a discretionary decision for the circuit court, and we will uphold the court's discretionary decision regarding frivolousness if the court "examined the relevant facts, applied a proper standard of law and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach." *Wenzel v. Wenzel*, 2017 WI App 75, ¶32, 378 Wis. 2d 670, 904 N.W.2d 384 (citation omitted). All doubts regarding whether a claim is frivolous "'are resolved in favor of the party or attorney' whom it is claimed commenced or continued a frivolous action." *Howell v. Denomie*, 2005 WI 81, ¶8, 282 Wis. 2d 130, 698 N.W.2d 621 (quoted source omitted).

¶48 In this case, the Neitzells served the Flemings with a motion for sanctions pursuant to WIS. STAT. § 802.05, asserting that there was no evidence

16

that the house contained faulty wiring or charred framing. After the case was dismissed, the circuit court heard oral argument on the sanctions motion, determined that the Flemings' decision to continue their claims was not frivolous, and denied the motion.

¶49    The Neitzells argue on appeal that the circuit court erred in denying their sanctions motion because the Flemings continued to pursue claims of faulty wiring and charred framing even after they knew or should have known that the claims were untrue, and because the circuit court misunderstood the law and misapplied it in this case. Our review of the record refutes the Neitzells' argument.

¶50    The circuit court consulted the correct standard of law, referring expressly to the provisions of WIS. STAT. § 802.05 quoted above. The court considered evidence presented by the Flemings in support of their claims, including an electric inspection record, pre-restoration pictures of charred studs and framing, and deposition testimony indicating that none of the framing was replaced in the restoration work. The court heard arguments from the Neitzells that the electric inspection record was not credible because it was not produced by a licensed electrician and that the photographs were not credible because they were taken before restoration work commenced. The court found that there were "disparities" in the parties' views of the evidence and that, in light of those disparities, the Flemings' continued claims were not frivolous.

¶51    The record shows that the circuit court examined the relevant facts, applied the proper statutory standard, and demonstrated a rational process to reach the reasonable conclusion that sanctions were not warranted. We conclude that the Neitzells fail to show that the circuit court erroneously exercised its discretion.

¶52    No appellate costs shall be assessed to either party.  *See* WIS. STAT. RULE 809.25(1).

## CONCLUSION

¶53    For the reasons stated above, we affirm.

*By the Court.*—Judgment affirmed.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)5.