**COURT OF APPEALS
DECISION
DATED AND FILED**

**July 28, 2021**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP1987**

Cir. Ct. Nos. **2016CV589
2017CV432**

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT II**

LOWE'S HOME CENTERS, LLC,

    PLAINTIFF-APPELLANT,

V.

CITY OF DELAVAN,

    DEFENDANT-RESPONDENT.

APPEAL from an order of the circuit court for Walworth County: DANIEL STEVEN JOHNSON, Judge. *Affirmed*.

Before Neubauer, C.J., Reilly, P.J., and Davis, J.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Lowe's Home Centers, LLC (Lowe's) appeals from an order of the circuit court dismissing its challenges to the City of Delavan's

(the City) 2016 and 2017 tax assessments. Lowe's argues that the court erred in concluding that the assessments were not excessive. We affirm.

## BACKGROUND

¶2 In 2005, Lowe's completed construction of a big box store in Delavan (the subject property). In 2013, a market analysis of the subject property was done by the City's assessor at the time, who arrived at an assessed value of $8,992,300. No changes were made to the subject property's assessed value for 2016 and 2017, which were maintenance years for tax assessment purposes.

¶3 Lowe's, which owned and occupied the subject property in 2016 and 2017, using it as a retail home improvement store, challenged the City's tax assessments for those years. The City's Board of Review waived the hearing on the claims and disallowed the claims. Lowe's brought an action under WIS. STAT. § 74.37(3)(d) (2019-20)[1] challenging the 2016 tax assessment as excessive in Walworth County Circuit Court. About a year later, Lowe's filed an action in circuit court challenging the 2017 assessment. The cases were consolidated.

¶4 A three-day court trial was held in April 2019. The circuit court heard testimony from Luke Mack, the City's assessor; Lowe's expert appraiser Michael MaRous; the City's expert appraiser Scott Chapko; and Brett Harrington, another Lowe's expert. The parties submitted pretrial and posttrial briefs.

¶5 In a written decision affirming the City's assessments and dismissing Lowe's complaints, the circuit court determined that Lowe's did not overcome the

---

[1] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

2

presumption of correctness afforded to tax assessments either by showing that Mack did not follow the *Wisconsin Property Assessment Manual* (2016)[2] (the manual) or by providing significant contrary evidence showing that the assessor's value is wrong.

¶6      The circuit court analyzed the assessments under the three-tier hierarchy provided for in Wisconsin statutes and case law,[3] as well as in the manual.  *See* WIS. STAT. § 70.32(1); *State ex rel. Markarian v. City of Cudahy*, 45 Wis. 2d 683, 685-86, 173 N.W.2d 627 (1970); *see also* ***Bonstores Realty One, LLC v. City of Wauwatosa***, 2013 WI App 131, ¶14, 351 Wis. 2d 439, 839 N.W.2d 893.

¶7      As to the first challenge to the presumption of correctness, adherence to the manual, the circuit court rejected Lowe's selective citation to one of the questions Mack answered when testifying, which indicated that Mack had merely carried over the 2013 assessment without conducting any analysis, and instead chose to review Mack's answer to that one question in the context of his entire testimony.  The court specifically found that Mack conducted "an independent analysis … to arrive at the values for the 2016 and 2017 appraisals and that the

---

[2]  The parties rely on the 2016 *Wisconsin Property Assessment Manual*.  All references to the manual will be to the 2016 edition.

[3]  Tier I considers a recent arm's-length sale of the property in question and is not at issue here because there has not been a recent arm's-length sale of the subject property.  *See* ***Nestlé USA, Inc. v. DOR***, 2011 WI 4, ¶28, 331 Wis. 2d 256, 795 N.W.2d 46.  Tier II extrapolates fair market value based on recent sales of comparable properties and is only a viable methodology if the recent sales are of properties that are actually reasonably comparable.  ***Regency W. Apartments LLC v. City of Racine***, 2016 WI 99, ¶¶28, 70, 372 Wis. 2d 282, 888 N.W.2d 611.  Tier III encompasses other valuation techniques, most prominently the cost and income approaches.  ***Nestlé USA, Inc.***, 331 Wis. 2d 256, ¶29.

valuation arrived at is appropriate and in compliance with the provisions in the [m]anual."

¶8    As to the second challenge to the presumption, the requirement of significant contrary evidence to rebut it, the circuit court found that MaRous did not provide sufficiently reliable testimony concerning the value of the subject property due to a variety of problems with his appraisal.  MaRous testified that the value of the subject property was $4,600,000 for the 2016 and 2017 tax years.  The court examined the evidence that Lowe's presented in its attempt to show that the assessments were excessive, noting that none of the sales used by MaRous in his Tier II analysis qualified as reasonably comparable sales under the applicable law.  This was due to the fact that MaRous attempted to compare the value of the subject property to sales of "dark" and "distressed" properties, neither of which the subject property was in 2016 or 2017.  The court noted that "due to the significant deficiencies in Mr. MaRous' appraisal" Lowe's failed to put on "significant contrary evidence that the City's value is incorrect."  The court went on to review the City's evidence and found that the City's expert appraiser, Chapko, provided credible opinion testimony under a Tier II analysis on the value of the subject property.

¶9    Because the circuit court found that "the appraisal done by Mr. MaRous is not [sufficiently reliable], and the Tier II analysis done by Mr. Chapko is sufficient to determine value," the court did not reach the issue of the Tier III analysis done by either appraiser.  The court also noted that it "did not find Mr. Harrington's testimony or study particularly helpful" and, therefore, it did not rely on Harrington's testimony in reaching its decision.  Lowe's appeals.

¶10    In addition to the parties' briefs, an amicus brief was filed by the Wisconsin Manufacturers & Commerce. We include additional facts as necessary below.

## DISCUSSION

¶11    This is a review of the circuit court's decision rejecting Lowe's' claims of excessive tax assessments under WIS. STAT. § 74.37. "The question on appeal in a … § 74.37 action is not whether the initial assessment was incorrect, but whether it was excessive." *Metropolitan Assocs. v. City of Milwaukee*, 2018 WI 4, ¶40, 379 Wis. 2d 141, 905 N.W.2d 784.

¶12    Pursuant to WIS. STAT. § 70.32(1), "[r]eal property shall be valued by the assessor in the manner specified in the Wisconsin property assessment manual." A municipality's assessment is presumed correct upon entry of the assessed value into the assessment roll and submission of the assessor's affidavit:

> The value of all real and personal property entered into the assessment roll to which such affidavit is attached by the assessor shall, in all actions and proceedings involving such values, be presumptive evidence that all such properties have been justly and equitably assessed in proper relationship to each other.

WIS. STAT. § 70.49(2). Here, it is undisputed that the subject property was assessed at $8,992,300 in the challenged tax years. Thus, the assessments are "entitled to a presumption that [they were] 'justly and equitably' made, giving rise to a presumption of correctness." *Metropolitan Assocs.*, 379 Wis. 2d 141, ¶50; *see also* **Bonstores**, 351 Wis. 2d 439, ¶10 ("Because both parties agreed that the property was assessed at $25,593,300, the City has met its burden of establishing the presumptive fair market value of the property.").

¶13    "The presumption can be overcome if the challenging party presents significant contrary evidence," *Metropolitan Associates*, 379 Wis. 2d 141, ¶50, or shows that the assessment does not comply with Wisconsin law or the manual, *see Regency West Apartments LLC v. City of Racine,* 2016 WI 99, ¶¶3-4, 22, 71, 73, 372 Wis. 2d 282, 888 N.W.2d 611; *see also Bonstores*, 351 Wis. 2d 439, ¶5. "[W]hen a city assessor correctly applies the *Property Assessment Manual* and Wisconsin statutes, and there is no significant evidence to the contrary, courts will reject a party's challenge to the assessment." *Allright Props., Inc. v. City of Milwaukee*, 2009 WI App 46, ¶12, 317 Wis. 2d 228, 767 N.W.2d 567.

¶14    "Whether a city has erroneously failed to follow statutory requirements in making an assessment is a question of law that we review de novo." *Walgreen Co. v. City of Madison*, 2008 WI 80, ¶17, 311 Wis. 2d 158, 752 N.W.2d 687; *see also Bonstores*, 351 Wis. 2d 439, ¶6 ("[W]e independently review whether a valuation complied with the statutes and the Wisconsin Property Assessment Manual."). However, "we defer to the circuit court's findings of fact when resolving conflicting evidence. We will not upset the court's factual findings, including findings involving the credibility of witnesses, unless they are clearly erroneous." *Bonstores*, 351 Wis. 2d 439, ¶6 (citation omitted); *see* WIS. STAT. § 805.17(2). "In particular, it is within the province of the factfinder to determine the weight and credibility of expert witnesses' opinions." *Bonstores*, 351 Wis. 2d 439, ¶6.

¶15    Lowe's presents five arguments on appeal: (1) the 2016 and 2017 assessments were not determined in compliance with the manual, (2) the circuit court erred in dismissing MaRous' Tier II evidence, (3) the court erred in accepting Chapko's Tier II evidence, (4) the court misapplied Wisconsin law in evaluating the Tier II evidence, and (5) the court erred in not accepting MaRous'

Tier III evidence as indicative of the value of the subject property. Based on our review of the briefs and the record, however, we conclude that Lowe's arguments should actually be placed into three baskets rather than five. Specifically, we address Lowe's arguments on the following terms: (1) whether the City's assessments complied with the manual and are therefore entitled to a presumption of correctness, (2) whether Lowe's overcame the presumption of correctness by presenting significant contrary evidence that the assessments were excessive, and (3) whether the circuit court's findings and credibility assessments were clearly erroneous. We address each argument in turn below.

*The City's Assessments are Entitled to a Presumption of Correctness Because the Assessor Complied With the Manual*

¶16 As stated above, the City is entitled to a presumption that the assessment was "justly and equitably" made, giving rise to a presumption of correctness. *See* WIS. STAT. § 70.49(2); *see also* **Bonstores**, 351 Wis. 2d 439, ¶10. Lowe's argues that it has overcome the presumption because it contends that the assessor did not comply with the manual in arriving at his 2016 and 2017 assessments. More specifically, Lowe's argues that Mack violated the manual by carrying over the 2013 assessed value without conducting any independent analysis.

¶17 Mack testified that he determined the assessments of the subject property for 2016 and 2017 using the cost approach, as he assumed his predecessor had done in 2013. Even if Mack did not make every calculation to perfection, the assessment must stand so long as the amount of the assessment is not excessive. *See* **Metropolitan Assocs.**, 379 Wis. 2d 141, ¶40. "[T]he assessor does not have to have perfect information when setting an assessment, only … the

best information practically available." ***Marathon Petroleum Co. LP v. City of Milwaukee***, 2018 WI App 22, ¶53, 381 Wis. 2d 180, 912 N.W.2d 117.

¶18    Mack further testified that the 2016 and 2017 assessments were maintenance assessments.  Maintenance assessments are appropriate under the manual as long as the assessor completes an annual review of sales to determine if specific classes or types of property need to be adjusted to maintain equity in the assessments. *Wisconsin Property Assessment Manual*, at 19-19.[4]

¶19    Mack testified that the 2013 assessment of the subject property was based on a cost approach; replacement costs were based on "Marshall and Swift" cost data; and depreciation and additional obsolescence were applied.  He testified that his challenged assessments complied with the manual because he did not solely "carry over" the assessment, despite Lowe's repeated assertion to the contrary in this appeal.  Rather, Mack testified that he did the required annual review of sales in arriving at his valuation of the subject property for 2016 and 2017.  Moreover, the circuit court made an explicit finding that Mack conducted "an independent analysis … to arrive at the values for the 2016 and 2017" assessments "and that the valuation arrived at is appropriate and in compliance with the provisions in the [m]anual."

---

[4] For a discussion of the annual process of adjusting property values to maintain equity among assessments, including maintenance assessments, *see **Lowe's Home Centers, LLC v. City of Wauwatosa***, No. 2020AP393, unpublished slip op. ¶¶17-18 (WI App July 7, 2021).  *See* WIS. STAT. RULE 809.23(3)(a), (b) (generally, an "unpublished opinion may not be cited in any court of this state as precedent or authority," but an "unpublished opinion issued on or after July 1, 2009, that is authored by a member of a three-judge panel … may be cited for its persuasive value").

¶20 In further keeping with the manual's requirements, Mack also compared the existing assessment of the subject property to the recent reevaluations he performed for other communities within the same county as Delavan. Mack explained at trial that he also used a Computer Assisted Mass Appraisal model to complete the 2016 and 2017 assessments, yet another methodology that the manual specifies as acceptable because it "provide[s] an opportunity to increase the efficiency and technical capabilities of the assessor's office [and] also allow[s] the assessor to produce more accurate and equitable valuations."[5] *Wisconsin Property Assessment Manual*, at 7-40. Lowe's concedes "that standardized mass appraisal techniques may be used by an assessor to estimate a property's market value for a given assessment year" and, by extension, if a mass appraisal was done in 2016 and 2017, it was lawful for the City to use that mass appraisal to establish its initial assessment of the Lowe's property. While Lowe's questions Mack's credibility regarding whether he conducted a mass appraisal, it did not present sufficient evidence to convince the circuit court otherwise. We do not disturb the circuit court's factual findings, including findings involving the credibility and weight of witness testimony, unless they are clearly erroneous. *See **Bonstores***, 351 Wis. 2d 439, ¶6.

¶21 Based on the foregoing evidence and findings, we conclude that Lowe's has failed to prove that Mack did not comply with the manual. *See **Clear Channel Outdoor, Inc. v. City of Milwaukee***, 2017 WI App 15, ¶4, 374 Wis. 2d 348, 893 N.W.2d 24 ("If by any reasonable view of the evidence the assessment is

---

[5] For a more detailed discussion of the process of conducting mass appraisals to assist in valuing properties, *see **Lowe's/Wauwatosa***, 2020AP393, ¶¶24-26.

valid, it must be upheld."). The City's assessments are entitled to a presumption of correctness on this ground.

*Lowe's Did Not Rebut the Presumption of Correctness by Presenting Significant Contrary Evidence That the Assessments Were Excessive*

¶22    Lowe's next set of arguments are aimed at challenging the circuit court's application of the three-tier ***Markarian*** hierarchy. *See generally* ***Markarian***, 45 Wis. 2d 683, 685-86. To summarize briefly, Lowe's argues that the circuit court erred in rejecting MaRous' Tier II and Tier III evidence as sufficient to rebut the presumption of correctness, while at the same time embracing Chapko's Tier II analysis as sufficient evidence of the value of the subject property.

¶23    WISCONSIN STAT. § 70.32(1) provides a rubric for the three methods by which assessors may determine the value of real property. Our appellate courts have explained that these methods constitute a three-tier hierarchy:

> Evidence of an arm[']s-length sale of the subject property is the best evidence of true cash value. [Tier I] If there has been no recent sale of the subject property, an assessor must consider sales of reasonably comparable properties. [Tier II] Only if there has been no arm[']s-length sale and there are no reasonably comparable sales may an assessor use any of the third-tier assessment methodologies. [Tier III]

***Allright Props.***, 317 Wis. 2d 228, ¶11 (*quoting* ***Adams Outdoor Advert., Ltd. v. City of Madison***, 2006 WI 104, ¶34, 294 Wis. 2d 441, 717 N.W.2d 803). The third tier is comprised of "all the factors collectively which have a bearing on value of the property in order to determine its fair market value." ***Adams Outdoor Advert.***, 294 Wis. 2d 441, ¶35 (quoting ***Markarian***, 45 Wis. 2d at 686). "These factors include 'cost, depreciation, replacement value, income, industrial

conditions, location and occupancy, sales of like property, book value, amount of insurance carried, value asserted in a prospectus and appraisals produced by the owner.'" **Adams Outdoor Advert.**, 294 Wis. 2d 441, ¶35 (citation omitted).

¶24     It is undisputed in this case that the subject property had not been sold in the approximately fifteen years since its construction so as to enable a Tier I analysis.  Thus, the circuit court appropriately began by examining the second tier.

*Tier II Analyses*

¶25     The Tier II sales comparison approach "relies on recent market sales of similar properties to predict the probable market price of the subject." *Wisconsin Property Assessment Manual*, at 7-22.  According to the manual, "[c]omparable sales refer to properties that are similar to the subject property in age, condition, use, type of construction, location, design, physical features and economic characteristics." *Id.*, at 7-24.

¶26     Lowe's' expert, MaRous, based his Tier II sales comparison approach on the sale of six properties that he concluded were reasonably comparable to the subject property.[6]  Based on this analysis, MaRous determined the value of the subject property to be $4,600,000 for the 2016 and 2017 assessment periods, as compared to the City's assessed value of $8,992,300. However, the circuit court agreed with the City's expert, Chapko, that the six properties were not reasonably comparable.  The court also concluded that

---

[6] MaRous' appraisal also included fourteen sales of stores from around the country.  The circuit court did not address these other fourteen sales in its decision, and the parties do not develop arguments based on these sales on appeal.

11

Chapko's Tier II analysis was "reasonable, sufficient, and credible such as to render [Chapko's comparable sales] usable in comparison to the subject" and "sufficient to determine value."

¶27 The circuit court found "significant deficiencies" in MaRous' proposed comparable sales and concluded that MaRous' appraisal was, at least at times, "in apparent direct conflict with the principles outlined in the [m]anual." To briefly summarize the problems the court found, it noted that two of the six MaRous' comparables were improperly used "dark properties," three were improperly used "distressed properties," and the final sale involved such "abnormal" conditions, agreements, circumstances, and "significant adjustments" that it "raise[d] concerns about how comparable this property really is."[7] As such,

---

[7] The following chart presents the data MaRous relied on in support of his Tier II appraisal:

| | Tier II Comparable Sales Analysis | | | | | | |
|---|---|---|---|---|---|---|---|
| | **Sales** | **Sale Date** | **Sale Price** | **Building Area (SF)** | **Year Built** | **Transaction Price/SF** | **Adjusted Price/SF** |
| 1 | Former American TV Appleton, WI | 04/2014 | $4,250,000 | 121,756 | 1986 | $34.91 | $32.82 |
| 2 | Former Kmart Oshkosh, WI | 11/2013 | $1,750,000 | 104,000 | 1967 | $16.83 | $17.00 |
| 3 | Former American TV Oak Creek, WI | 04/2014 | $4,250,000 | 130,001 | 1986 | $32.69 | $33.18 |
| 4 | Former Lowe's Brown Deer, WI | 12/2013 | $5,150,000 | 139,571 | 2006 | $36.90 | $33.21 |
| 5 | Former Target Kenosha, WI | 11/2012 | $2,385,000 | 96,149 | 1994 | $24.81 | $20.10 |
| 6 | Former American TV Pewaukee, WI | 04/2014 | $4,400,000 | 110,424 | 1983 | $39.85 | $31.48 |
| | **Subject Property** | | | | | | |
| | Lowe's Delavan, WI | | | 134,574 | 2005 | | |

the court concluded that Lowe's failed to provide "significant contrary evidence that the City's value is incorrect."

¶28     We address in turn Lowe's' arguments that the circuit court erred in rejecting MaRous' comparables based on vacancy status and exposure time ("dark properties"), as well as the court's characterization of three of the comparables as "distressed properties," and its alleged failure to consider one of MaRous' comparables.

*Dark Properties (MaRous' Comparable Sales 2 and 5)*

¶29     Lowe's' primary argument regarding MaRous' proposed comparables is that it was improper for the circuit court to consider the vacancy status of these properties.  Lowe's argues that the court's rejection of two of the sales based on their vacancy status is in violation of the manual and "unsupported by the record."

¶30     In ***Bonstores***, the owner of a department store challenged its tax assessment as excessive, and it relied on an appraiser's analysis of purportedly comparable sales of other department stores that had gone "dark." ***Bonstores***, 351 Wis. 2d 439, ¶21.  We affirmed the circuit court, which rejected the appraiser's opinion that the sales were reasonably comparable in light of the fact that the subject property had *not* gone "dark."  As we explained, it was appropriate for the circuit court to reject the appraiser's comparative sales analysis as unreliable because it was based on properties that were not reasonably comparable. ***Id.***, ¶22.

¶31     Our decision in ***Bonstores*** is consistent with the manual. Specifically, the manual cautions that "[t]he assessor should avoid using sales of improved properties that are vacant ('dark') or distressed as comparable sales

13

unless the subject property is similarly dark or distressed." *Wisconsin Property Assessment Manual*, at 9-12. The manual further provides that "[a] vacant store is considered dark when it is vacant beyond the normal time period for that commercial real estate marketplace and can vary from one municipality to another." *Id.*

¶32 It is undisputed that as of the valuation dates, the Lowe's property was not vacant, was not in transition to another use, and was operating in a stable condition. Yet MaRous selected sales of properties to compare to the subject property in Delavan that were vacant or dark. His appraisal does not present an apples-to-apples comparison. *Bonstores* instructed against using these type of sales:

> The court explained that it did not "see the apples-to-apples comparison" between the subject property and the properties [Bonstores] relied on as comparable, and concluded that [Bonstores] did not provide meaningful comparable properties because many of the properties had gone "dark." [Bonstores] defined "dark" as "a period of time where the store is not operating."…
>
> ….
>
> [Bonstores] agreed that the subject property is not a "dark" store, has never gone dark, and there is no evidence it would go dark and be sold off as a single property. As such, the circuit court did not erroneously determine that [Bonstores'] reliance on the sales of properties [it] deemed comparable was unreliable.

*Bonstores*, 351 Wis. 2d 439, ¶¶21-22.

¶33 *Bonstores* provides sufficient support for the circuit court's determination that the sales MaRous identified are not reasonably comparable to

the Lowe's store at issue, which undisputedly is not a "dark" store, has never closed, and there was no evidence that it is at risk of closing. *See id.*[8] The circuit court observed that MaRous' comparable sales two and five had been vacant for around four years by the time they sold, which was "beyond the [two-to-three-]year window" that MaRous had identified "as the normal exposure time for the Delavan area." The court's finding that "[e]ven if adjustments could be made for these deficiencies[,] the deficiencies themselves are significant and call into question the value of the appraisal as a whole" is not clearly erroneous and is supported by the record.

### *Distressed Properties (MaRous' Comparable Sales 1, 3, and 6)*

¶34     Lowe's asserts that none of MaRous' proposed comparable sales were "'distressed sale[s]'" like those at issue in ***Bonstores*** because the properties did not involve sellers acting under "undue duress." However, this misses the main point of ***Bonstores*** that sales of "dark" properties are simply not appropriate comparables to non "dark" properties and nothing in that case suggests that there was a need to inquire into a particular seller's "duress" in order to reach that conclusion. Indeed, given the inability to generate revenue in a darkened state, such properties are inherently a form of a "distress sale." ***Id.*** (observing that the circuit court had "used the phrase 'distressed property' to refer to a 'dark'

---

[8] Lowe's does not address ***Bonstores***' dark store position in its principal brief, but in its reply asserts that "[t]he City relies heavily on an over-extrapolation and misinterpretation of the holding in ... ***Bonstores***," ***Bonstores Realty One, LLC v. City of Wauwatosa***, 2013 WI App 131, 351 Wis. 2d 439, 839 N.W.2d 893, and violates ***Walgreen Co. v. City of Oshkosh***, No. 2013AP2818, unpublished slip op. (WI App Dec. 17, 2014). We rejected these same legal arguments made by Lowe's relating to the proper consideration of vacancy status and exposure time when assessing property values, and for the same reasons articulated therein, we reject them here. *See* ***Lowe's Home Ctrs., LLC v. Village of Plover***, No. 2019AP974, unpublished slip op. ¶¶39-45 (WI App Oct. 29, 2020); s*ee also* ***Lowe's/Wauwatosa***, 2020AP393, ¶¶66-70.

business," and that "dark" referred to "a period of time where the store is not operating").

¶35     Regardless of whether any or all of MaRous' proposed comparable sales were distressed sales, or involving "undue duress," Lowe's argument fails because it is contrary to the manual's explicit directive that the assessor "should avoid using sales of improved properties that are vacant ('dark') or distressed as comparable sales unless the subject property is similarly dark or distressed." *See Wisconsin Property Assessment Manual*, at 9-12. Thus, whether distressed or vacant, such attributes are properly considered in determining if properties are reasonably comparable to the subject property. The subject property was neither dark nor distressed, and, therefore, the circuit court did not err in finding it is not comparably valued to sales of such properties. Again, for the reasons articulated in Lowe's other excessive assessment challenges involving the appropriate legal analysis of the same expert's, MaRous', reliance on "distressed" properties, we reject Lowe's challenge here. *Lowe's Home Ctrs., LLC v. Village of Plover*, No. 2019AP974, unpublished slip op. ¶¶42-43 (WI App Oct. 29, 2020); s*ee also Lowe's Home Ctrs., LLC v. City of Wauwatosa*, No. 2020AP393, unpublished slip op. ¶¶68-69 (WI App July 7, 2021).

¶36     Furthermore, regarding MaRous' comparable sales one, three, and six (the American TV stores), the circuit court noted that the stores were "going out of business, subject to a receivership, and needed to liquidate their assets." This, the court noted, meant that "half of the comparable sales used by Mr. MaRous were in receivership." The circuit court recognized, as do we, that the

> [c]ourt needs to look at the totality of the evidence together and not simply the subparts in isolation. In doing so, the fact remains that the above concerns pointing to the properties being distressed provides significant evidence

16

> for th[e] [c]ourt to find that there are concerns with the use of these comparable sales by Mr. MaRous and subsequently calling into doubt the overall validity of his opinion on the value of the Lowe's property.

This further supports the court's conclusion that "due to the significant deficiencies in Mr. MaRous' appraisal [as] noted above, it can certainly not be said that [Lowe's] has provided significant contrary evidence that the City's value is incorrect."

¶37 Under Wisconsin law, MaRous' use of vacant, in transition, and distressed properties to value the occupied and stable subject Lowe's property is a fundamental and overarching fatal flaw in his Tier II valuation. A property's full value "must reflect its 'highest and best use'" which should not be speculative. *Forest Cnty. Potawatomi Cmty. v. Township of Lincoln*, 2008 WI App 156, ¶10, 314 Wis. 2d 363, 761 N.W.2d 31 (citation omitted); *Wisconsin Property Assessment Manual*, at 7-12. A subject property's highest and best use is "defined as that use which over a period of time produces the greatest net return to the property owner." *Nestlé USA, Inc. v. DOR*, 2011 WI 4, ¶27, 331 Wis. 2d 256, 795 N.W.2d 46 (citation omitted). Highest and best use "is a threshold issue because the properties an assessor identifies as 'reasonably comparable' to the subject property for assessment purposes must be reasonably comparable to the subject property's highest and best use." *Id.*, ¶32 (citation omitted). Failure to do so will undervalue the property. None of MaRous' comparable sales involve properties being put to a highest and best use that is similar to that of the stabilized and operating Lowe's property.

¶38 There can only be one highest and best use for any given property. *Wisconsin Property Assessment Manual*, at 7-12. MaRous does not rely on a single highest and best use for both the comparable and subject properties, as

17

*Nestlé* and the manual require. Instead, MaRous opines that the highest and best use may be as a single user retail property; however, his reliance on vacant or distressed properties or properties in transition is not reasonably comparable to the highest and best use of the Lowe's property. As a result, MaRous valued the Lowe's property in a condition that it is not in.

¶39    MaRous further opines that if there is no demand for that single user retail property, Lowe's could alternatively be converted to multi-tenant use property. This ignores the fact that the subject property's current status as an operating store indicates that there is no such lack of demand, making this alternative analysis largely irrelevant. Indeed, MaRous' alternative use, conversion into multi-tenant use, is not the use that would result in the greatest net return to the property owner due to the high cost to convert the property for this new use. MaRous assumes $30-$60 per sq. ft. of costs the owner would need to spend to convert the subject property into an alternative use. Given this cost to convert, MaRous' alternative highest and best use conclusion cannot be accurate when continued use in its current form would not incur such high costs, thus yielding a greater net return to the property owner. MaRous' highest and best use conclusion is contrary to *Nestlé* and the manual.[9]

*The Final Comparable Sale (MaRous' Comparable Sale 4)*

¶40    The final sale that MaRous offered as comparable to the subject property was a former Lowe's store that was converted into a Walmart store in Brown Deer, Wisconsin. As the circuit court explained it, Lowe's and Brown

---

[9] We rejected the same legal challenge discussed herein relating to MaRous' attempts to offer alternative highest and best uses in *Lowe's/Wauwatosa*, 2020AP393, ¶¶38-54.

Deer had special financial terms in an agreement at the time the store was built that Lowe's did not have with the City here, and Walmart also received several perks from Brown Deer related to that sale. Moreover, the City's expert testified that "per capita income in [the Brown Deer area] is one of the lowest of all of metropolitan Milwaukee, therefore, there's much less buying power" in that area as opposed to the Delavan area. For those reasons, and the fact that the store had been vacant for two years before Walmart purchased it, this final sale was not comparable because it was not an "apples-to-apples comparison." *See* **Bonstores**, 351 Wis. 2d 439, ¶¶21, 24.

¶41 For all these reasons, we conclude that the circuit court did not err when it concluded that MaRous' comparable sales analysis did not constitute significant contrary evidence that the 2016 and 2017 assessments were excessive.

*The Circuit Court's Findings and Credibility Assessments Were Not Clearly Erroneous*

¶42 The circuit court first found that Mack complied with the manual and, contrary to Lowe's selective use of testimony, Mack conducted "an independent analysis done to arrive at the values for the 2016 and 2017 appraisals and that the valuation arrived at is appropriate."[10] The court also found that "the evidence presented by Lowe's in this case is significantly less credible than that presented by the City when it comes to a proper value to be attached to this real estate for the years 2016 and 2017." And, though noting that Chapko's Tier II

---

[10] The circuit court also found that "even if [Mack's] appraised value was not in compliance with the [m]anual[,] [Lowe's] would still not prevail in this case" due to the "deficiencies" that rendered MaRous' appraisal unreliable.

analysis was not perfect, the court made the following findings with respect to Chapko's valuation:

> [T]he adjustments done by Mr. Chapko are reasonable, sufficient, and credible such as to render these properties usable in comparison to the subject. Maybe most importantly, he did not use any properties, much less half of his properties that were subject to a receivership or could otherwise be argued as being distressed. Nor did he use any "dark" properties. [Lowe's] takes Mr. Chapko to task for his use of leased fee investment sales amongst other things. [Lowe's] points to the [m]anual for the proposition that in order to use such properties you must analyze the underlying leases at issue and that diligent research must be conducted in that regard. This court finds that Mr. Chapko did in fact do diligent research. He looked into the leases and gathered information that was available pertaining to them. In some cases that information was limited but none the less he was able to determine, based on his professional experience that the leases were for market value. There is no requirement that he look at the written leases themselves if he can use other methods to form a professional opinion on the issue. He did that in this case and the [c]ourt finds his opinion credible under the circumstances.

In contrast, the court had the following to say: "MaRous['] report cannot be relied on and there is really no evidence left to contradict the City's value at that point."

¶43 Where there is conflicting testimony the fact finder (here, the circuit court) is the ultimate arbiter of credibility. "The weight and credibility to be given to the opinions of expert witnesses is 'uniquely within the province of the fact finder.'" ***Adams Outdoor***, 294 Wis. 2d 441, ¶27 (citation omitted). The circuit court's determinations that Mack valued the properties correctly and did not simply "carry over" the 2013 assessment without analysis and MaRous did not provide a credible opinion of value of the subject property are not clearly erroneous. *See* ***Bonstores***, 351 Wis. 2d 439, ¶6 ("We will not upset the court's factual findings, including findings involving the credibility of witnesses, unless

they are clearly erroneous."); WIS. STAT. § 805.17(2). Neither is its opinion that Chapko's opinion was more credible than MaRous'.

¶44 Unlike MaRous, Chapko selected comparable sales of occupied properties, as the subject property in Delavan is occupied. With respect to all of the sales he selected, Chapko testified that each was an occupied property, similar to the subject, with a lease that was at market rent, and no duress involved in the sale. Lowe's argues that an appraiser needs to have a copy of the lease to determine whether the rent of a sale subject to a lease is at market, but fails to identify any Wisconsin authority that so mandates, and Lowe's offered no expert testimony that such requirement exists under generally accepted appraisal standards.

¶45 The circuit court determined that Chapko credibly testified that he contacted the brokers for the sales he used, and for several of the sales he was advised that the lease was at market rents. For sales where he could not get source information, he looked at the price per square foot, the cap rates that he received, and whether the buyer and seller were related parties. He concluded that to a reasonable degree of certainty, the leases were all at market rents. Lowe's offered no testimony or evidence that contradicted Chapko's testimony.

*Tier III Analyses*

¶46 The circuit court determined that because Chapko's Tier II analysis was sufficient to value the subject property in 2016 and 2017, it need not reach issues concerning the appraisers' competing Tier III valuations. As we have concluded, the circuit court's credibility determinations and findings were not clearly erroneous. Thus, like the circuit court, we also decline to explore the experts' Tier III evidence on appeal.

¶47 Lowe's argues that "[t]he Circuit Court erred in not even addressing [MaRous'] detailed, unrebutted [Tier III] cost approach as significant contrary evidence." Lowe's provides no legal authority in support of this statement—which on its face is contrary to settled law concerning three tier appraisal methodology (*see supra* ¶23)—and does not sufficiently develop any argument in support thereof, instead making a series of conclusory statements. *See **State v. Pettit***, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) ("We may decline to review issues inadequately briefed.").

## CONCLUSION

¶48 Based on the foregoing, we conclude that Lowe's has not overcome the presumption of correctness that attached to the City's assessments and that the record supports the circuit court's determinations in this case. Accordingly, we affirm the circuit court's order upholding the assessments.

*By the Cour*t.—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.