COURT OF APPEALS
DECISION
DATED AND FILED

June 4, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP1730**

**STATE OF WISCONSIN**

Cir. Ct. No. 2018FA606

**IN COURT OF APPEALS
DISTRICT II**

IN RE THE MARRIAGE OF:

STACY KAISER,

　　PETITIONER-APPELLANT,

　V.

JASON NIEMYJSKI,

　　RESPONDENT-RESPONDENT.

APPEAL from an order of the circuit court for Racine County: KRISTIN M. CAFFERTY, Judge. *Affirmed.*

Before Gundrum, P.J., Grogan, and Lazar, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Stacy Kaiser, pro se, appeals from a post-divorce circuit court order regarding her motions to reopen evidence related to child support matters, including associated issues arising from pretrial court rulings. In essence, Kaiser argues that the court misinterpreted the *Glidewell*[1] decision and misapplied it to the facts here. She further asserts that the court erroneously exercised its discretion in admitting the testimony of the family court social worker assigned to the case (the social worker). Based upon our review of the briefs and Record, we reject Kaiser's arguments and affirm.

¶2 The parties do not dispute the following facts, most of which are taken from the circuit court's lengthy written decision on various motions to modify custody and placement. Kaiser and Niemyjski were married on December 9, 2015. The two lived together before their marriage, along with Kaiser's son "Jason" and Niemyjski's two older daughters.[2] Shortly after the marriage, Niemyjski adopted Jason, and Jason's last name was officially changed to Niemyjski on the adoption order.

¶3 Kaiser filed for divorce in September of 2018. The couple eventually reached a Marital Settlement Agreement (MSA) which contained agreements as to custody, placement, and child support. During the course of the divorce action, Kaiser did not pursue her claims of domestic abuse or stalking or report those concerns to the court; to the contrary, she stipulated that Niemyjski was "fit and proper to [entrust with] the care and legal custody of" Jason, and that Jason's "best interests … are served by awarding joint legal custody to both parties." The circuit

---

[1] *Glidewell v. Glidewell*, 2015 WI App 64, 364 Wis. 2d 588, 869 N.W.2d 796.

[2] We refer to the parties' minor child using a pseudonym to protect his privacy.

court approved the MSA on May 15, 2019. The MSA provided for joint legal custody of Jason, established a 10/4 placement schedule that favored Kaiser, and changed Jason's last name to Kaiser-Niemyjski.[3]

¶4      The parties successfully managed the custody and placement schedule to which they had mutually agreed upon for about one year after the circuit court approved the MSA. Then, in Spring 2020, Kaiser filed a motion for child support and a motion to relocate to Colorado, asking the court to permit her and Jason to move there for employment because she was laid off from her job during COVID. Kaiser did not allege any issues of stalking, domestic violence, other abuse, or any concerns with Niemyjski's behavior when she filed this motion. Niemyjski opposed the move to Colorado. A guardian ad litem (GAL) was appointed, the parties were ordered to mediation, and mediation was unsuccessful.

¶5      Just a few months after filing the motion to relocate, Kaiser filed motions for modification of placement and for the appointment of the family court social worker, and asked for the adjournment of the scheduled trial. Kaiser's affidavit alleged that Niemyjski's "actions of stalking us and our home have escalated [Jason]'s fears and reluctance to spend time with [Niemyjski]" and further alleged "emotional harm" by Niemyjski towards Jason. The parties agreed to adjourn the trial until the social worker could complete his interviews and make a recommendation. Another hearing date and new trial date were scheduled for late 2020 and early 2021, respectively.

---

[3] A "10/4 placement schedule" means that in every two-week period, the child has placement with one parent for ten of the fourteen days, and placement with the other parent for four of the fourteen days.

¶6      Prior to the next scheduled circuit court hearing, the parties agreed upon a 12/2 placement schedule (twelve days of fourteen with one parent, two days of fourteen with the other) in Kaiser's favor. Niemyjski understood the schedule to be temporary to allow Jason time to work through some anxiety issues, though Kaiser thought it to be permanent. The parties never submitted the 12/2 placement agreement to the court, and it was never reduced to a formal court order.

¶7      Also sometime before the next hearing, the social worker made his recommendations to the circuit court. According to the court, the social worker indicated that he had met with Kaiser to assist him in making recommendations, and Kaiser had made "several troubling statements" including:

> (1) an acknowledgement that her real desire in filing the motion to relocate was to reduce if not eliminate [Jason]'s time with Niemyjski; (2) Kaiser asked whether she could "undo" the adoption of [Jason] by Niemyjski; (3) Kaiser referred to Dr. Holtz as [Jason]'s therapist, when as a medical doctor,[4] she should have known that he was a child-involved mediator and not a therapist; and (4) that despite her concerns about [Jason]'s anxiety being confirmed by Dr. Holtz, Kaiser did not pursue counseling for [Jason] but instead sought to reduce his time with his father.

The social worker opined that Jason's anxiety was likely caused by ongoing parental conflict. The social worker recommended resuming the 10/4 placement schedule, that the counseling with Jason and Niemyjski continue, that Kaiser and Niemyjski each continue their individual therapy, and, finally, that Kaiser and Niemyjski participate in co-parenting counseling. The parties again stipulated to adjourning

---

[4] Kaiser graduated from medical school but did not complete her residency. She left her residency during her second year to care for her premature son, and never returned. Kaiser is neither board-certified nor eligible to be board-certified (BE/BC). In order for her to become BE/BC, she would have to repeat both medical school and her residency.

the scheduled trial to allow them to continue with mediation.  They also agreed to continue with the 12/2 placement schedule.

¶8      In Spring 2021, "a serious incident occurred in which Niemyjski, during his period of placement, disciplined [Jason] for cutting some tree branches off of a live and sentimental tree on his property by threatening and then pretending to cut off [Jason]'s fingers with a machete" (the machete/tree incident).  "Niemyjski … apologized to [Jason] for the [machete/tree] incident both that day and the next day at school[,]" and both Jason and Niemyjski had been engaged in individual counseling and in "reunification therapy" together since.  As a result of his conduct, Niemyjski ultimately pled guilty to Use of a Dangerous Weapon Neglecting a Child (Harm did not occur) and Use of a Dangerous Weapon Disorderly Conduct, both misdemeanors.  He was convicted in 2022, and placed on one year of probation, with sentence withheld and 30 days in the county jail imposed and stayed.  A charge of Use of Dangerous Weapon Causing Mental Harm to Child was dismissed and read in.  Kaiser "unilaterally suspended placement of [Jason] with Niemyjski" after the machete/tree incident.

¶9      Following the machete/tree incident, there was no contact between Niemyjski and Jason.  Contact was slowly resumed until December 1, 2021, when a temporary 12/2 placement schedule was stipulated to by the parties pending trial.  The 12/2 schedule was in place until February 2023, when the circuit court ordered the resumption of the 10/4 placement schedule.[5]  Both the GAL and the social worker were in favor of allowing Niemyjski overnight placement with Jason.

---

[5] This court views the machete/tree incident with grave concern.  However, we are bound by the factual findings of the circuit court, and the court found that overnight placement with Niemyjski was in Jason's best interest.

¶10     In September 2022, Kaiser, now pro se, re-filed both of her prior motions for child support and sought a ruling for past and future child support. Kaiser asserts that in 2022, she came into "new information" in the form of cell phone data that Kaiser claimed was additional proof of Niemyjski's stalking behaviors. The circuit court found that before the divorce, Kaiser "could have requested GPS data from [Niemyjski] to document his actions. She chose instead to enter into a stipulated agreement for joint custody and a 10/4 placement schedule." The court ruled that the evidence was not new information because it was discoverable to Kaiser before the divorce. Nonetheless, the court allowed Kaiser's private investigator to testify regarding other allegedly-damning cell phone data, which the court later concluded "did not impeach Niemyjski" or establish stalking or domestic abuse.

¶11     After hearing the evidence and considering the parties' arguments and submissions, the circuit court issued a final order: (1) granting Kaiser's motion for child support, though not necessarily in the amount Kaiser sought; (2) denying Kaiser's motion to reopen evidence in the child support matter; and (3) denying Kaiser's motion for sanctions against Niemyjski for alleged discovery violations. Kaiser appeals. She does not take issue with the court's child support rulings, instead making two categories of arguments related to Kaiser's motions to modify child support and placement—one involving the court's ruling on the admission of alleged pre-and-post-divorce stalking behaviors, and one involving the social worker's testimony. We address each category of Kaiser's arguments below.

¶12     We turn first to Kaiser's argument that the circuit court erred in refusing to consider her pre-divorce abuse allegations against Niemyjski during post-divorce proceedings. Kaiser states that the court "misapplied" and "misinterpreted" *Glidewell v. Glidewell*, 2015 WI App 64, 364 Wis. 2d 588, 869

N.W.2d 796. Kaiser argues that the court erred in concluding that she had waived her right to seek application of the presumption set forth in WIS. STAT. § 767.41(2)(d) and was estopped from bringing up pre-divorce abuse evidence in post-divorce proceedings.[6]

¶13    "We review modification of a placement order to determine if the decision reflects a reasonable exercise of discretion." *Glidewell*, 364 Wis. 2d 588, ¶22.  As Kaiser correctly notes, the circuit court's determination to apply estoppel also is "committed to the circuit court's discretion." *Elliot v. General Cas. Co.*, 2011 WI App 155, ¶33, 337 Wis. 2d 737, 807 N.W.2d 33.  "We will sustain discretionary acts as long as the [circuit] court examined the relevant facts, applied a proper standard of law and, using a demonstrated rational process, reached a conclusion a reasonable judge could reach."  *Glidewell*, 364 Wis. 2d 588, ¶22 (alteration in original; citation omitted).

¶14    We are not persuaded by Kaiser's arguments.  The circuit court reasoned that Kaiser's domestic abuse allegations against Niemyjski pre-dated the parties' divorce, were not raised at the time of the divorce several years prior, and had minimal relevance in the post-divorce context given that Kaiser had agreed to the terms of the child support, custody, and placement orders at the time of the divorce.

¶15    The circuit court here properly relied on *Glidewell*.  In *Glidewell*, this court concluded that a litigant in the post-divorce context waived the statutory

---

[6] WISCONSIN STAT. § 767.41(2)(d)1 (2023-24) creates "a rebuttable presumption that it is detrimental to the child and contrary to the best interest of the child to award joint or sole legal custody to" a parent when "the court finds by a preponderance of the evidence that [the parent] has engaged in a pattern or serious incident of interspousal battery … or domestic abuse."

All references to the Wisconsin Statutes are to the 2023-24 version.

presumption against awarding custody to a parent who had engaged in domestic abuse because the abuse had occurred prior to the time of divorce and the parties had stipulated to joint custody at that time. *Id.*, ¶¶2, 4. The facts here are analogous to those in *Glidewell*, and the court's reasoning here is consistent with *Glidewell*. Kaiser has not provided any contrary authority showing that the court's reasoning was an erroneous exercise of discretion. For these reasons, we reject Kaiser's argument that the circuit court erred by refusing to consider her allegations of predivorce domestic abuse against Niemyjski.[7]

¶16 The circuit court here, like in *Glidewell*, properly found that Kaiser had waived her right to seek the presumption established by WIS. STAT. § 767.41(2) and was estopped from presenting pre-divorce evidence of abuse. As explained:

> We note, however, that [the wife's] decision to stipulate to joint custody at the time of the divorce does not mean that she is barred from ever again seeking application of WIS. STAT. § 767.41(2)(d); rather she has waived her right to seek application of the presumption based upon the *facts that existed at the time* she stipulated to joint custody.

*Glidewell*, 364 Wis. 2d 588, ¶20 (emphasis in original). Likewise, in the present action, the court did not bar Kaiser from introducing evidence of post-divorce abuse or stalking. In fact, Kaiser spent significant time attempting to prove just that. Despite her efforts, however, the court expressly found that there was no evidence to support a finding that Niemyjski had engaged in domestic abuse or stalking. We

---

[7] To the extent that Kaiser raises other arguments that we have not addressed, we conclude that those arguments are not sufficiently coherent or developed to merit discussion.

8

conclude that there was no error with the court's interpretation or application of *Glidewell* to the facts here.[8]

¶17     We are equally unpersuaded by Kaiser's second argument—namely, that the circuit court erroneously exercised its discretion in admitting the testimony of the assigned social worker.  According to Kaiser, because the social worker "had specific duties to perform under the statutes which … he did not do[,]" and he "was not going to deliver a competent or unbiased report[,]" it "was contrary to the holdings of *Daubert*[], [WIS. STAT.] § 907.03[,] and a fair administration of the judicial process" to allow his testimony in post-divorce proceedings.  *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

¶18     We briefly address Kaiser's contention that the social worker "was obliged, under [WIS. STAT.] § 767.405(14)(a)(2m) to conduct an investigation into, '[w]hether either party has engaged in interspousal battery, as described in [WIS. STAT. §] 940.19 or 940.20 (1m), or domestic abuse, as defined in [WIS. STAT. §] 813.12 (1) (am).'"  First, Kaiser does not cite any law that requires the circuit court or anyone else to conduct such an investigation.  The Wisconsin statutes permit "but [do] not mandate, an analysis of whether a party has engaged in a pattern or serious incident of domestic abuse."  *Glidewell*, 364 Wis. 2d 588, ¶16.  Finally, the social worker testified that, in his opinion, nothing Kaiser presented to him rose to the level of domestic abuse or stalking; therefore, the situation did not warrant an assessment.  Kaiser has not demonstrated any error in this regard.

---

[8] This court takes domestic violence incidents seriously, and our decision today in no way is meant to indicate that circuit courts should not consider evidence of domestic violence in making child custody and placement decisions when the evidence is presented in a timely manner.  That said, we are bound by the law when reviewing circuit court decisions, and the law is clear that, in this case, in order for Kaiser to present evidence of pre-divorce violence or abuse, she had to have raised it in the initial divorce proceedings.

¶19    Kaiser next argues that allowing the social worker's testimony violated WIS. STAT. § 907.02 which provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if the testimony is based upon sufficient facts or data, the testimony is the product of reliable principles and methods, and the witness has applied the principles and methods reliably to the facts of the case.

Section 907.02(1).    Our review of a circuit court's admission of expert witness testimony is guided by a two-part test: first, whether the court applied the proper legal standard; and second, whether the court "properly exercised its discretion in determining which factors should be considered in assessing reliability, and in applying the reliability standard to determine whether to admit or exclude evidence under § 907.02(1)." *Seifert v. Balink*, 2017 WI 2, ¶90, 372 Wis. 2d 525, 888 N.W.2d 816 (footnote omitted).    "We examine the circuit court's rulings both independently as a question of law and also under the erroneous exercise of discretion standard." *Id.*, ¶88.    Our review of the court's decisions regarding the admission of expert testimony is deferential. *State v. Hogan*, 2021 WI App 24, ¶26, 397 Wis. 2d 171, 959 N.W.2d 658.    Even under the standards established in *Daubert*, a court retains "substantial discretion" in performing its gatekeeping function. *State v. Jones*, 2018 WI 44, 381 Wis. 2d 284, ¶33, 911 N.W.2d 97 (citation omitted).

¶20    We note that although Kaiser argues that the circuit court allowed the social worker's testimony in violation of *Daubert* and WIS. STAT. § 907.03, Kaiser fails to develop these arguments within the appropriate legal standards.    She in no way suggests that the social worker was unqualified to render an opinion, that the

social worker's testimony did not assist the court in rendering its decision, or that the social worker employed unsound methodology in reaching his opinions. Because Kaiser's "arguments are not developed themes reflecting any legal reasoning. [and] are supported by only general statements[,]" we do not further discuss them as "inadequately briefed." *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992).

¶21　Kaiser also takes issue with the substance of the testimony and, more specifically, with the social worker's conclusion that there was no evidence of abuse or stalking by Niemyjski.  Kaiser faults the circuit court for its reliance on the social worker's testimony and recites several instances where she disagrees with the testimony the social worker offered.  The circuit court, not this court, determines the credibility of witnesses and resolves conflicts in the evidence.  *Tang v. C.A.R.S. Prot. Plus, Inc.*, 2007 WI App 134, ¶19, 301 Wis. 2d 752, 734 N.W.2d 169.  The court relied on aspects of the social worker's testimony that the court found credible, and Kaiser has not persuaded us that the court erroneously exercised its discretion in so finding.  We therefore reject Kaiser's position that it "was reversible error" for the court to admit and rely on the social worker's testimony.

　　　　*By the Court.*—Order affirmed.

　　　　This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)5.